609 A.2d 177

**COMMONWEALTH of Pennsylvania**

v.

**Benjamin LOPEZ, Jr., Appellant.**

Superior Court of Pennsylvania.

Argued March 4, 1992.

Filed May 14, 1992.

Reargument Denied July 14, 1992.

Elliott J. Segel, Erie, for appellant.

William R. Cunningham, Dist. Atty., Erie, for Com., appellee.

Before DEL SOLE, JOHNSON and FORD ELLIOTT, JJ.

JOHNSON, Judge:

This is an appeal from the judgment of sentence imposed after a jury convicted Benjamin Lopez, Jr. of Possession With Intent to Deliver Marijuana in violation of 35 Pa.C.S.

§ 780–113(a)(30). After post trial motions were denied, the court sentenced Lopez to five to ten years' imprisonment. On appeal, Lopez contests solely the denial of his Motion to Suppress seventy-six pounds of marijuana, seized from his vehicle by police, following a routine traffic stop. He argues that his right, protected by the Fourth Amendment and the Pennsylvania Constitution, Article I, Section 8, to be free from unreasonable searches and seizures was violated. We agree and reverse.

In reviewing the denial of a motion to suppress, our responsibility is to determine whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those findings. *Commonwealth v. Vinson*, 361 Pa.Super. 526, 522 A.2d 1155 (1987). If the suppression court held for the prosecution, we consider only the evidence of the prosecution's witnesses and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted. *Id.* When the factual findings of the suppression court are supported by the evidence, the appellate court may reverse if there is an error in the legal conclusions drawn from those factual findings. *Commonwealth v. Reddix*, 355 Pa.Super. 514, 513 A.2d 1041 (1986).

The relevant facts in this case are not in dispute, and, after careful review, we are satisfied that the suppression court's factual findings, as they appear in its Opinion of November 1, 1989, are supported by the record. However, we are compelled to note several important omissions from the suppression court's summary of the salient facts regarding Corporal Martin's reasons for suspecting Lopez of drug related activity.

On the afternoon of July 13, 1989, Benjamin Lopez was driving a Ryder rental truck towing a Volkswagen automobile on Interstate 90 in Erie County. His wife, Yvonne, and his four year old child were passengers. Corporal Robert Martin of the Pennsylvania State Police noticed the tow chains between the Ryder truck and the Volkswagen were

not crossed as required by § 4905(d) of the Pennsylvania Vehicle Code, and signalled Lopez to pull over.

After the stop, upon request, Lopez produced his driver's license, vehicle registration and the rental agreement for the truck, which revealed that the truck had been rented in Carlsbad, New Mexico with a destination of Glen Falls, New York. Upon concluding that the papers were in order, Corporal Martin did not return them to Lopez but, instead asked Lopez to exit the vehicle and walk to its rear.

After showing Lopez the towing violation, Corporal Martin proceeded to question Lopez regarding the origin, destination, purpose, and duration of his trip from New Mexico. While retaining the license and rental agreement, Corporal Martin asked Lopez "[W]ould you mind letting me look into the back of the truck?" Preliminary Hearing Transcript, August 2, 1989, at 7; R.R. at 7A. Lopez did not object, opened the lock and pulled up the door. Corporal Martin observed that the truck was empty except for several blankets, some children's toys and two suitcases. He then asked Lopez about the ownership and destination of the Volkswagen automobile; Lopez responded that he was delivering it to his brother.

Corporal Martin then told Lopez to sit in the Ryder truck while he radioed for assistance. When Trooper William Wagner, also of the Pennsylvania State Police, arrived, Corporal Martin asked Lopez if he had any drugs, weapons or alcohol in the vehicles, to which Lopez responded "no." Nonetheless, Corporal Martin asked Lopez if he would "consider signing a voluntary consent form to let [them] search the vehicles?" Id. at 8; R.R. at 8A. Lopez agreed and signed a consent form which was provided to him by Trooper Wagner.

After Lopez signed the form, Corporal Martin instructed one of the other troopers, who had arrived on the scene, to conduct a canine search of the Volkswagen. During the search, Lopez and his wife were asked to stand behind the guardrails, alongside the thruway, for their protection. The search revealed a cache, containing approximately seventy-

six pounds of marijuana, in a compartment located behind the back seat of the Volkswagen. Lopez was then patted down, handcuffed and placed inside a patrol vehicle where he was given his *Miranda* warnings. Yvonne Lopez was not searched or arrested at the scene. She was, however, subsequently arrested at the state police barracks, after the officers conferred with the District Attorney's Office.

Lopez filed a motion to suppress, and on October 31, 1989, a suppression hearing was held before the Court of Common Pleas of Erie County. The Commonwealth submitted, as evidence of their burden of proof, the transcript of the preliminary hearing held in this matter on August 2, 1989, at which both Corporal Martin and Trooper Wagner testified. At the preliminary hearing, Corporal Martin was questioned regarding the reasons for suspecting Lopez of drug related activity:

**DEFENSE COUNSEL:** There wasn't any—well, when you looked inside the rental and you are speaking to Mr. Lopez and explaining why you stopped him and so on, you didn't personally observe anything inside the field of your observation inside that rental truck, any objects or any conduct by any individuals inside which would lead you to believe there was suspicion for criminal activity or anything of that nature, did you?

**CPL. MARTIN:** No.

.    .    .    .    .

**DEFENSE COUNSEL:** And after you showed him the chains and explained to him that they are supposed to be crossed, and the reason for the stop, that's when you had this conversation with him about "Where are you going? Where is your destination?" And so forth?

**CPL. MARTIN:** Yes.

.    .    .    .    .

**DEFENSE COUNSEL:** What was the purpose of asking him these other questions, as far as where he was going and who he was moving and if he was moving and so on?

What was the purpose at that time in asking those type of questions of Mr. Lopez?

**CPL. MARTIN:** Just policeman's intuition. Just you know, investigative talking to the gentleman.

Preliminary Hearing Transcript, August 2, 1989, at pp. 16–18; R.R. at 16A–18A.

At the conclusion of the suppression hearing, the court determined that neither the initial stop of Lopez's vehicle, nor Corporal Martin's request that Lopez exit his vehicle were violative of the Fourth Amendment. The court also determined that the subsequent detention and questioning of Lopez was reasonable, that his consent to the search of the Volkswagen was "voluntary and knowing," and that the subsequent related search was lawful. In determining whether the suppression court erred in its legal conclusions, we will address the constitutionality of each increment of the confrontation separately, as if each was a separate and distinct "non-custodial detention," i.e. 1) the initial stop of Lopez for a traffic violation; 2) the request for Lopez to get out of his vehicle; 3) the subsequent detention and questioning of Lopez; and 4) his consent to search the Volkswagen.

A noncustodial detention or forcible stop occurs when a police officer temporarily detains an individual by means of physical force or a show of authority for investigative purposes. *Commonwealth v. Brown*, 388 Pa.Super. 187, 190, 565 A.2d 177, 178 (1989). *See also Commonwealth v. Williams*, 287 Pa.Super. 19, 22, 429 A.2d 698, 700 (1981). A forcible stop constitutes a seizure of a person and thus, activates the protections of the Fourth Amendment and the requirements of *Terry v. Ohio*, 392 U.S. 1, 20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889, 903 (1968); *Commonwealth v. Brown, supra*, 388 Pa.Super. at 190, 565 A.2d at 178.

In order for a stop to be reasonable under the Fourth Amendment of the United States Constitution, the police must have articulable and reasonable grounds to suspect, or probable cause to believe, that criminal activity

may be afoot. *Commonwealth v. Swanger,* 453 Pa. 107, 307 A.2d 875 (1973); *Commonwealth v. Murray,* 460 Pa. 53, 331 A.2d 414 (1975). This standard is met "if the police officer's reasonable and articulable belief that criminal activity was afoot [is] linked with his observation of suspicious or irregular behavior on behalf of the particular defendant stopped." *Commonwealth v. Espada,* 364 Pa.Super. 604, 609, 528 A.2d 968, 970 (1987).

First, it is uncontested that Corporal Martin stopped Lopez because he had articulable and reasonable grounds to suspect, or probable cause to believe, that a provision of the Vehicle Code was being violated. Such a stop was clearly permissible under 75 Pa.C.S. § 6308; *Commonwealth v. Elliott,* 376 Pa.Super. 536, 546 A.2d 654 (1988), *appeal denied* in 521 Pa. 617, 557 A.2d 721 (1989).

■ Lopez contends, however, that after he was stopped, Corporal Martin was without legal basis to order him to get out of the Ryder truck, absent a specific reason to believe that he was either armed and dangerous or that criminal activity was afoot. We disagree.

The United States Supreme Court addressed this issue in *Pennsylvania v. Mimms,* 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977). Focusing on the reasonableness in the circumstances of the officer's request for the driver to get out of the vehicle, the *Mimms* court held that, out of concern for the safety of police officers, an officer may, consistent with the Fourth Amendment guarantee against unreasonable searches and seizures, order a driver from a vehicle, even though the officer has no basis to suspect the driver of foul play. Consequently, although Corporal Martin did not have an articulable basis to believe that Lopez was armed and dangerous or that criminal activity was afoot, we find, in accord with *Mimms,* that because Corporal Martin had effectuated a valid traffic stop, his request that Lopez exit the vehicle so that he could explain the traffic code violation did not violate the Fourth Amendment.

■ Next, Lopez challenges the propriety of the subsequent detention and investigation by Corporal Martin. He argues that because Corporal Martin had no reasonable grounds to suspect him of drug related activity, the continued detention and questioning about the destination, and purpose of renting the Ryder truck, was unreasonable. We agree.

This precise issue was addressed in a case, remarkably similar to the one at bar. *U.S. v. Guzman*, 864 F.2d 1512, 1519 (10th Cir. 1988). Although we are not bound by *Guzman*, we find its reasoning to be persuasive.

In *Guzman*, Guzman and his wife were travelling in New Mexico in a rented vehicle. An officer, who suspected a violation of New Mexico's seat belt law, stopped their vehicle. The officer requested to see Guzman's license and rental agreement. The officer reviewed Guzman's license, registration and rental agreement and concluded that they were in order.

Rather than issuing a warning or citation, the officer decided to conduct a further investigation to determine whether Guzman was hauling contraband in the rented vehicle. While still retaining the documents, the officer asked the couple a series of questions relating to their marriage, their destination, and whether they were carrying large sums of money. Guzman's wife told the officer that they had saved $5000 for the trip.

The officer proceeded to ask Guzman if he was carrying weapons or contraband, to which Guzman responded "no" and that the officer was "free to look." The officer then produced a consent form, which Guzman executed. Upon searching the vehicle, the officer found a package of cocaine located underneath the rear seat.

Guzman filed a motion to suppress the cocaine seized from the vehicle. The motion challenged the legality of the initial stop, the extent of the subsequent seizure and investigation, and the consent to the search. The district court excluded all the evidence on the ground that the initial stop

was merely a pretextual justification for an unconstitutional stop. The court also concluded that even if the initial stop was legitimate, the officer's conduct was "entirely beyond reason." 864 F.2d at 1515. The United States appealed the district court's decision to grant Guzman's motion to suppress. On appeal, the Court of Appeals, concluding that it was without enough facts to determine the pretextual stop issue, addressed the issue of whether the officer, who stopped a vehicle for a seat belt violation, had a reasonable suspicion to justify the subsequent detention and questioning of its occupants.

The court held that when conducting a routine traffic stop, an officer may request a driver's license and vehicle registration, run a computer check and issue a citation. 864 F.2d at 1519. *See also Commonwealth v. Robinson*, 399 Pa.Super. 199, 582 A.2d 14 (1990), *appeal denied* in 528 Pa. 629, 598 A.2d 282 (1991), (demand to inspect vehicle identification number is within scope of police authority pursuant to traffic violation stop). Upon producing a valid driver's license and registration, the driver must be allowed to proceed on his way, without being subject to further delay by police for additional questioning. *Id.* In order to justify detaining the driver for further questioning, the officer must have "reasonable suspicion 'of illegal transactions in drugs or of any other serious crime.'" *Id.* (quoting *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983)).

In *Guzman*, the officer attempted to articulate his suspicions by pointing to the wife's demeanor and responses to his questions. He also noted that he did not believe that the couple could have saved $5000. The Court of Appeals held that these actions did not arouse objective suspicion of any crime greater than failing to wear a seat belt. The court also held that the officer's "hunch" was not sufficient to justify, after the fact, a seizure that was not objectively reasonable. *See Reid v. Georgia*, 448 U.S. 438, 100 S.Ct. 2752, 65 L.Ed.2d 890 (1980) (unparticularized suspicions of

inarticulate hunches are insufficient to justify detentions or seizures under Fourth Amendment, no matter how brief).

In this case, we reach a similar result. Corporal Martin reviewed Lopez's license, registration and rental papers and concluded that they were in order. No objective circumstances suggested that Lopez or his wife had committed any crime more serious than the failure to cross the tow chains. Therefore, after Corporal Martin explained the violation, his authority was limited by both state and federal law, to issuing a citation or warning.

Without returning the documents, however, based on his "policeman's intuition," Corporal Martin questioned Lopez regarding the origin, destination, purpose and duration for traveling and renting the Ryder truck. Preliminary Hearing Transcript, August 2, 1989, 16–18; R.R. at 16A–18A. In addition, Corporal Martin asked Lopez whether he could look inside the truck and whether he was transporting any drugs, alcohol or weapons. Corporal Martin admitted at the preliminary hearing that this series of questions were unrelated to the purpose of the initial stop. Absent reasonable grounds to suspect an illegal transaction in drugs or other serious crime, the officer had no legitimate reason for detaining Lopez or for pursuing any further investigation of him, hence, the detention ceased to be lawful at this point. Thus, in accord with *Guzman*, we find that Corporal Martin's continued detention and investigation of Lopez constituted an unreasonable seizure in violation of the Fourth Amendment; consequently, the evidence seized should have been suppressed.

▪ In response to the arguments of Lopez on appeal, the Commonwealth claims that Lopez's consent legitimized the search of the car. We do not agree. Because we conclude that the detention of Lopez was illegal, Lopez's consent to the search of the Volkswagen was tainted by the illegality and was ineffective to justify the search. *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); *Commonwealth v. Daniels*, 410 Pa.Super 275, 599 A.2d 988 (1991).

Based upon the foregoing, we conclude that the evidence which was seized as a result of a violation of the Fourth Amendment was the fruit of an illegality and, therefore, the suppression court's decision not to exclude it was erroneous. Thus, we need not address Lopez's contention that the initial stop was a pretext to stop his car and search it for evidence of another crime. Accordingly, we reverse the judgment of sentence and remand this case for a new trial at which the Commonwealth will not be permitted to introduce the illegally seized evidence.

Judgment of sentence reversed. Case remanded for a new trial. Jurisdiction relinquished.