## Commonwealth v. Davis

418

C.P. of Cumberland County, no. 95-0931.

*Jonathan R. Birbeck, assistant district attorney,* for the Commonwealth.
*H. Anthony Adams, assistant public defender,* for defendant.

HESS, *J.,* February 28, 1996—This matter is before the court on the defendant's omnibus pretrial motion in the nature of one to suppress evidence. On May 20, 1995, at approximately 7:35 p.m., a vehicle operated by defendant Alex Davis was stopped on the Pennsylvania Turnpike by State Trooper Oberrender for speeding. The defendant stated he had a Pennsylvania driver's license, but did not have it with him. When a license check revealed no record of a license, the defendant stated he had a West Virginia driver's license. A check revealed that defendant's West Virginia license was under suspension. The defendant also lacked registration for the vehicle, explaining that he borrowed

the vehicle from a friend in West Virginia to visit his child in Philadelphia.

At some point during the traffic stop, Trooper Todd Rudy arrived on the scene. Upon inquiry, the troopers learned that neither passenger had a driver's license. The passengers stated they were traveling from Philadelphia to West Virginia to visit a grandmother. Citations were then issued to Mr. Davis for speeding and operating a motor vehicle without a valid license.

At approximately 8:15 p.m., the defendant and his two passengers were told they were free to leave, but that they could not leave in the vehicle since none of them could produce a valid driver's license. After the individuals were informed they were free to leave, they were questioned about whether the vehicle contained contraband. The defendant was then requested to allow a search of his vehicle. At 8:28 p.m., the defendant signed a consent form allowing a search of all vehicle compartments for any contraband.

The troopers searched the trunk and found a duffel bag. Without further consent, the troopers opened the duffel bag and searched through its contents. The troopers found a pair of sneakers in the duffel bag and searched them. Inside the sneakers were bags that were also searched. The bags contained balls of duct tape that were searched. The balls of tape were cut open to reveal clear bags of cocaine. The defendant was then arrested for unlawful possession and intent to deliver cocaine. The defendant filed this omnibus pretrial motion to suppress all evidence obtained as a result of an alleged unreasonable search and seizure.

The defendant argues he was unlawfully detained after being issued the traffic citations and being told he was free to leave. The Commonwealth contends that the traffic stop had been concluded when the de-

fendant was told he was free to leave, and the subsequent inquiry leading to the consent to search was a "mere encounter" because the defendant was, indeed, free to leave. A "mere encounter" or request for information requires no level of suspicion on behalf of the officer and does not require an individual to stop or respond to the request. An encounter is a seizure under the Fourth Amendment, however, if "in view of all the circumstances surrounding the incident, a reasonable person would have believed he was not free to leave." *Commonwealth v. Ellis,* 379 Pa. Super. 337, 354, 549 A.2d 1323, 1331 (1988) (quoting *Michigan v. Chesternut,* 486 U.S. 567, 573, 100 L.Ed.2d 565, 572 (1988)). If a reasonable person would not feel free to leave, the police must cite reasonable and articulable grounds for conducting an investigative detention of the individual. See *Commonwealth v. Lopez,* 415 Pa. Super. 252, 258-59, 609 A.2d 177, 180 (1992).

The validity of the initial stop of the vehicle driven by defendant Davis for a vehicle code violation is undisputed. It is also undisputed that the defendant was told he was free to leave after being issued his traffic citations. The primary issue is whether this encounter was a seizure implicating the Fourth Amendment.

The case of *Florida v. Bostick,* 501 U.S. 429, 115 L.Ed.2d 389 (1991), is particularly instructive. In *Bostick,* the defendant argued he was not free to leave a police encounter partially because he was physically confined as a passenger on a bus. *Id.* at 431-33, 115 L.Ed.2d at 396-97. The circumstances of that case involved a county sheriff's drug task force program where officers at a bus station would routinely board buses and randomly question passengers and sometimes seek consent to search luggage. *Id.* The police asked Mr. Bostick for such consent and informed him that he

had the right to refuse consent. *Id.* The defendant consented, and the subsequent search of his suitcase revealed cocaine. *Id.*

In addressing the defendant's suppression motion in *Bostick,* the United States Supreme Court first observed that "if this same encounter had taken place before Bostick boarded the bus or in the lobby of the terminal, it would not rise to the level of a seizure." *Id.* at 434, 115 L.Ed.2d at 398. There would be no seizure under those circumstances because Mr. Bostick would have been free to terminate the encounter because he could have simply walked away. *Id.* at 435, 115 L.Ed.2d at 398-99. Bostick distinguished his set of facts by arguing that any police encounter is more intimidating when the individual is *literally* not able to leave in order to terminate the police encounter. *Id.* Bostick argued that this physical confinement, along with the fear of missing the bus if he had departed at that time, would lead a reasonable person to believe that he or she was not free to leave. *Id.*

The Supreme Court considered the underlying intent of the "free to leave" protection under the Fourth Amendment and concluded that the test is whether an individual would not feel free to leave *as a result of police activity,* not simply whether the individual would feel free to leave for any other reason. *Id.* at 436, 115 L.Ed.2d at 400. The court opined that Bostick would not have felt free to leave the bus even if the police had not been present, and that "Bostick's movements were 'confined' in a sense, but this was the natural result of his decision to take the bus; it says nothing about whether or not the police conduct at issue was coercive." *Id.* at 436, 115 L.Ed.2d at 399. The U.S. Supreme Court remanded the case for findings of fact.

Prior to *Bostick,* the Pennsylvania courts dealt with the matter of the differences between a "seizure" of the person and a "mere encounter." In *In the Interest of Kathleen Jermaine,* 399 Pa. Super. 503, 582 A.2d 1058 (1990), the police had trailed the defendant from a train station in New York City to Philadelphia's 30th Street Station. They noticed that she had purchased a one-way ticket with cash and appeared to be very nervous when in the presence of police officers. She was confronted by a plainclothes policeman in Philadelphia who asked whether he could speak with her. The following then transpired:

"She said, 'Yeah.' I then asked her, 'Did you just come in on a train,' and she said, 'Yeah.'

"I asked her, 'Can I ask you where you came from,' and she said, 'New York.' I asked her, 'Do you have a train ticket or a receipt,' and she said, 'No.' I asked her if she had any identification and she said no. I asked her what her name was and she said Kathleen Jermaine.

"At this point she said, 'Can you tell me why you're stopping me because I did not do nothing.' At that time I informed her that I was a part of the Narcotics Interdiction Team, a team that was going to stop the flow of narcotics in Philadelphia by way of Amtrak trains.

"I asked her, 'Would you give me consent to search your bag,' and she just looked at me and she was also trembling very nervously. She did not say anything.

"I then asked her again, 'Miss, would you give me consent to search your bag.' She put her head down and said, 'Yes,' and handed me her bag. At that point I opened the bag and I found a brown paper bag. Upon opening the brown paper bag, there was a plastic bag which contained a large amount of white powdery sub-

stance, whcch (sic) also was in the form of chunks." *Id.* at 506-507, 582 A.2d at 1059-60.

The Superior Court concluded that the encounter between the officer and Jermaine did not rise to an investigatory stop and did not implicate a juvenile's Fourth Amendment rights. The court observed that police questioning, by itself, was unlikely to result in a Fourth Amendment violation. The court concluded that a person has been "seized" within the meaning of the Fourth Amendment only if, in view of all the surrounding circumstances, a reasonable person would have believed that he was not free to leave. *Id.* at 509-510, 582 A.2d at 1061.

"Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Id.* at 510, 582 A.2d at 1061 (quoting *United States v. Mendenhall,* 446 U.S. 544, 553-555, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497, 509-510 (1980)).

In *Commonwealth v. Tindell,* 427 Pa. Super. 399, 629 A.2d 161 (1993), police approached the defendant in an airport because she matched certain characteristics which differentiated individuals carrying drugs from the average airline passenger. They asked her about her travel plans and obtained identification. They then asked for consent to search the bags she was carrying. The search produced no contraband. She was then asked to consent to a pat-down search, though told she could refuse. When she did not refuse, the officers moved her to a more secluded area for the search. Before the search could be conducted, Tindell produced a pack-

age of cocaine from her jeans. The court concluded that Tindell had not been "seized" for purposes of the Fourth Amendment. *Id.* at 405, 629 A.2d at 164.

In *Commonwealth v. Jackson,* 428 Pa. Super. 246, 630 A.2d 1231 (1993), *appeal denied,* 537 Pa. 647, 644 A.2d 733 (1994), police officers, also at an airport, stopped the defendant because he matched a drug courier profile. As in *Tindell, supra,* the defendant was asked for identification and produced it. Jackson was asked to step out of the flow of traffic and into a hallway where he offered to allow the officers to search his bag. Also, as in *Tindell,* the officers asked the defendant to consent to a pat-down search which the defendant did not refuse. In *Jackson,* the court found a seizure of the person and that the Fourth Amendment was implicated. The only distinction which we can discern between *Jackson* and *Tindell* is that in the former case the police asked the defendant to step into a more secluded area *prior* to the request for a consent search whereas in *Tindell* the defendant was moved to such an area *after* she consented. In any event, there is no mention in *Jackson* of the holding in *Tindell.*

In the matter sub judice, the defendant had not been directed to remain in any particular place prior to the request for a consent search. To the contrary, he was told that he was free to leave. We readily understand the argument that freedom to depart when one finds oneself on the berm of the Pennsylvania Turnpike without a car is illusory. In fact, whether most reasonable persons would *ever* feel free to walk away from an inquiring police officer is also a question. As Judge Popovich, in his dissent in *Jermaine,* noted:

"Although constrained to follow the judgment of the Supreme Court regarding what a reasonable person believes when confronted by a law enforcement officer,

numerous Circuits of the United States Court of Appeal have recognized the artificiality of the Supreme Court's test. See *United States v. Thame,* 846 F.2d 200, 202 (3rd Cir. 1988), *cert. denied,* 488 U.S. 928, 109 S.Ct. 314, 102 L.Ed.2d 333 (1988) ('Although we have our doubts whether a reasonable person who is greeted by federal agents and asked for identification feels free to simply ignore the agents. . . .'); *United States v. Notorianni,* 729 F.2d 520, 522 (7th Cir. 1984) ('Maybe this is a wrong guess about what the average person feels in this situation. . . .'); *United States v. Cordell,* 723 F.2d 1283, 1286 (7th Cir. 1983), *cert. denied,* 465 U.S. 1029, 104 S.Ct. 1291, 79 L.Ed.2d 693 (1984) (Swygert J., concurring) ('I believe that as a factual psychological matter people who are stopped for questioning of this kind by police officers . . . generally do not feel "free to leave". . . .'); . . ." *Jermaine, supra* at 517-18, 582 A.2d at 1065. The foregoing observations notwithstanding, we believe that the current state of the law dictates our denial of the defendant's motion.

## ORDER

And now, February 28, 1996, the omnibus pretrial motion of the defendant is denied.