J. S61003/14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| ROBIN HICKMAN, | : | No. 448 WDA 2013 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence, February 11, 2013,
in the Court of Common Pleas of Allegheny County
Criminal Division at No. CP-02-CR-0010825-2011

BEFORE:  FORD ELLIOTT, P.J.E., WECHT AND STRASSBURGER,* JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED OCTOBER 29, 2014**

Robin Hickman appeals from the judgment of sentence of February 11, 2013, following his conviction of one count each of third degree murder, criminal conspiracy, firearms not to be carried without a license, and possession of a firearm by a minor.  We affirm.

> This matter arises out of the shooting death of David Spahr on November 15, 2010.  The Commonwealth established that the victim was found shot to death while seated in the driver's seat of his vehicle on Bortz [W]ay in Swissvale, Pennsylvania.  The victim had been shot at close range.  One bullet had entered the left side of his face and lodged in his right mandible. (T., p. 93) A second bullet entered the left chest and passed through various organs, including the aorta, and was recovered from the muscles of the right side of his body. (T., p. 96)  Ballistic analysis later established that the bullet taken out of Spahr's right mandible at autopsy had been fired by a .357 Taurus revolver.  The Taurus revolver had been recovered by police

---

* Retired Senior Judge assigned to the Superior Court.

during an investigation into a subsequent unrelated homicide of Charles Wooding which occurred in March of 2011, also in Swissvale. (T., p. 63) During that investigation, Defendant was questioned by police and he ultimately led police to the Taurus revolver which was found where it had been thrown into some weeds along a set of steps near the location of the Wooding shooting. (T., p. 64) Allegheny County ballistic experts matched the bullet taken from Spahr's body with the gun that had been used in the Wooding shooting. In addition, the Commonwealth established that a fingerprint found on the exterior passenger's side door of Spahr's vehicle matched the right little finger print of Defendant. (T., pp. 110-115)

The Commonwealth also offered at trial Defendant's confession which he made at the time of his arrest on July 28, 2011. Defendant was given his *Miranda*[1] rights at police headquarters. (T., pp. 123-126) In his confession, Defendant stated that on the day of the shooting he returned from work to his apartment and met with another individual, Hashim Rashad. (T., p. 131) Rashad told Defendant that he was having problems with Spahr over money. (T., p. 132) Rashad then asked Defendant to go with him to a meeting with Spahr at which time Rashad wanted Defendant to shoot Spahr. Rashad explained that he wanted Defendant to shoot Spahr because Spahr knew where Rashad's mother worked and his family lived. (T. p. 132) Rashad then told Defendant to bring his gun, which Defendant then got from his apartment. Rashad and Defendant then proceeded to meet Spahr. Rashad told Defendant that they were going to get into the [sic] Spahr's vehicle truck [sic] and then Defendant was to shoot him. (T., p. 133) Defendant then recounted they met the [sic] Spahr and got into his vehicle, with Defendant sitting in the middle of the bench seat and Rashad on the far right near the passenger side door. (T., p. 133) However, they drove a short distance and ended up in an alleyway, where

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

Defendant and Rashad exited the vehicle. At that time Rashad yelled at Defendant for not shooting the victim when they first got in the truck. (T., p. 134) Defendant and Rashad then return[ed] to the vehicle at which point Defendant walked up to the vehicle and fired one shot and then turned and ran. (T., p. 134) Defendant testified that as he was running he heard additional shots being fired and he continued running to his apartment where he hid the gun. (T., p. 134)

At trial, Defendant testified in his defense and recanted the confession, alleging that he was coerced into making it. Defendant testified that he was introduced to Spahr in November 2010 by another drug user known to him as Queenie. (T., p. 189) Queenie told Defendant that Spahr was looking for drugs and then, accompanied by Queenie, Defendant met Spahr on a nearby street where Spahr arrived in his vehicle. Defendant testified that Spahr:

> ". . . pulled up, she hopped in the car with him to do the transaction, and I'm standing on the passenger's side. We exchanged numbers, and he tells me to call him again anytime I have something good, he will spend some more money."
> (T., pp. 190-191)

Defendant testified that several days later, he texted Spahr again about meeting to buy drugs and ultimately met Spahr in McKeesport, a day or two before the [sic] Spahr was murdered. (T., p. 193) Defendant testified that after the meeting in McKeesport, he never saw Spahr again but that he did attempt to text him on November 15 and 16, but never got a response. (T., p. 194)

While Defendant denied shooting Spahr, Defendant admitted that he later came into possession of the Taurus revolver used in the Spahr killing, but not until four months after Spahr was killed. (T., p. 195) Defendant testified that on

March 15, 2011 he met Charles Wooding who told Defendant that he had a gun for sale at a low price. Defendant and Wooding exchanged phone numbers and planned on meeting later that day for Defendant to buy the gun. Wooding and Defendant met later in the day on Westmoreland Avenue in Swissvale in front of an apartment building. Wooding then asked Defendant to go inside to exchange the money for the gun. Defendant testified:

> ". . . once we go inside, we are on the second landing. I give him the money for the gun. He gives me the gun. When he's talking to me, he steps down from the landing with his back turned. When he turns around, pulls out a handgun. He tells me give it up, meaning give me everything I got. When he did this, I was in shock. I couldn't believe it. I stepped back and he cocks the gun back, meaning putting a bullet in the chamber, asks me do I think he's playing. I panic, I believe if I didn't pull the trigger to the revolver, I would have died that day." (T., pp. 195-196)

Defendant testified that after he shot Wooding he ran out of the building, through an alleyway and left by a set of steps where he threw the gun. (T., p. 196) Defendant admitted that he was later questioned by detectives about two weeks later concerning the incident. Defendant testified that he told the detectives that he had shot Wooding in self-defense and later took detectives to find the Taurus revolver. (T., p. 197) Defendant denied any involvement in the killing of David Spahr.

Regarding his confession, Defendant testified that when he was taken into custody on July 28, 2011 he denied being involved in Spahr's murder and asked the arresting detectives to call his mother so he could get a lawyer. Defendant testified that the detectives left the room and later returned

saying that they didn't have to call his mother. (T., p. 201) One of the detectives then allegedly grabbed the back of his neck and told him if he ever wanted to get out again he needed to sign the waiver of rights form presented to him. Defendant testified that he signed the form because he didn't believe he had a choice. (T., pp. 201-202) Defendant testified that despite repeatedly telling the police he was not involved in the killing, "they got frustrated and on their way out -- they want to leave the interrogation, and on the way out the detectives pushed me onto the floor." (T., p. 202) Defendant testified that he was scared and "I would've said anything to get out of that room." (T., p. 202)

Defendant also presented the testimony of his father, Robin Hickman, Sr. who testified concerning his attempts to speak to his son when he had arrived at the police station on the day Defendant was arrested. Mr. Hickman testified that he questioned the officers and they told him they would be right back to talk to him about his son but he then saw them leaving and he was never given the opportunity to speak to his son. (T., p. 228)

After being appropriately charged and during its deliberations, the jury requested that the taped confession be replayed. In addition, the jury requested additional instructions on first degree and third degree murder and conspiracy. (T., p. 228) The jury was reinstructed and the tape of the confession was played. After additional deliberations, Defendant was then found guilty as noted above.

Trial court opinion, 1/21/14 at 2-6.

On February 11, 2013, appellant was sentenced to 20 to 40 years' incarceration for third degree murder, a concurrent sentence of 20 to 40 years for criminal conspiracy, and a consecutive sentence of 2 to 4 years for carrying a firearm without a license. No sentence was imposed on the

charge of possession of a firearm by a minor. Therefore, appellant's aggregate sentence was 22 to 44 years' imprisonment. New counsel was appointed, and a timely notice of appeal was filed on March 12, 2013. On March 19, 2013, appellant was ordered to file a concise statement of errors complained of on appeal within 21 days pursuant to Pa.R.A.P., Rule 1925(b), 42 Pa.C.S.A.; appellant complied on July 1, 2013.[2] On January 21, 2014, the trial court filed a Rule 1925(a) opinion.

Appellant has raised the following issues for this court's review:

I. Did the trial court abuse its discretion in denying the motion to suppress [appellant]'s statement to the police insofar as he did not knowingly and voluntarily waive his **Miranda** rights?

II. Did the trial court err in allowing the taped statement of [appellant] to be re-played to the jury at the jury's request after it had begun to deliberate resulting in undue emphasis being placed on this evidence, which prejudiced [appellant]?

III. Did the trial court err in ruling that the fact that alleged co-conspirator, Hashim Rashad, confessed to the crime, was inadmissible evidence?

---

[2] While it appears that appellant's Rule 1925(b) statement was untimely filed, because the trial court accepted the late statement and addressed appellant's substantive issues, we will not find waiver. **Commonwealth v. Rodriguez**, 81 A.3d 103, 105 n.2 (Pa.Super. 2013), **appeal denied**, 91 A.3d 1238 (Pa. 2014); **Commonwealth v. Burton**, 973 A.2d 428, 433 (Pa.Super. 2009) (**en banc**).

Appellant's brief at 4 (capitalization omitted).[3]

In his first issue on appeal, appellant argues that the trial court erred by failing to suppress his statement to police. Appellant argues that he was a juvenile at the time of his arrest, was not permitted to call his parents or speak with a lawyer, and his confession was involuntary.

> In reviewing the denial of a motion to suppress, our responsibility is to determine whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those findings. If the suppression court held for the prosecution, we consider only the evidence of the prosecution's witnesses and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted. When the factual findings of the suppression court are supported by the evidence, the appellate court may reverse if there is an error in the legal conclusions drawn from those factual findings.

---

[3] An additional issue raised in appellant's Rule 1925(b) statement, challenging the discretionary aspects of sentencing, has been abandoned on appeal. In addition, any such claim would be waived as appellant failed to raise it at sentencing or in a post-sentence motion. **See Commonwealth v. Nischan**, 928 A.2d 349, 355 (Pa.Super. 2007), **appeal denied**, 936 A.2d 40 (Pa. 2007) ("an appellant can seek to appeal discretionary sentencing issues only after preserving them during the sentencing hearing or in post-sentence motions"), citing **Commonwealth v. Malovich**, 903 A.2d 1247, 1250 (Pa.Super. 2006); **Commonwealth v. Hyland**, 875 A.2d 1175, 1183 (Pa.Super. 2005), **appeal denied**, 890 A.2d 1057 (Pa. 2005) ("Objections to the discretionary aspects of a sentence are generally waived if they are not raised at the sentencing hearing or raised in a motion to modify the sentence imposed at that hearing.") (citations omitted).

> ***Commonwealth v. Lopez***, 415 Pa.Super. 252, 609 A.2d 177, 178-79 (1992) (citation omitted).

> A confession obtained during a custodial interrogation is admissible where the accused's right to remain silent and right to counsel have been explained and the accused has knowingly and voluntarily waived those rights. The test for determining the voluntariness of a confession and whether an accused knowingly waived his or her rights looks to the totality of the circumstances surrounding the giving of the confession.

> ***Commonwealth v. Jones***, 546 Pa. 161, 170, 683 A.2d 1181, 1189 (1996) (citations omitted). 'The Commonwealth bears the burden of establishing whether a defendant knowingly and voluntarily waived his ***Miranda*** 'rights.' ***Commonwealth v. Bronshtein***, 547 Pa. 460, 464, 691 A.2d 907, 913 (1997) (citation omitted).

***Commonwealth v. Davis***, 861 A.2d 310, 317 (Pa.Super. 2004), ***appeal denied***, 872 A.2d 171 (Pa. 2005).

> When deciding a motion to suppress a confession, the touchstone inquiry is whether the confession was voluntary. Voluntariness is determined from the totality of the circumstances surrounding the confession. The question of voluntariness is not whether the defendant would have confessed without interrogation, but whether the interrogation was so manipulative or coercive that it deprived the defendant of his ability to make a free and unconstrained decision to confess. The Commonwealth has the burden of proving by a preponderance of the evidence that the defendant confessed voluntarily.

***Commonwealth v. Nester***, 709 A.2d 879, 882 (Pa. 1998) (citations and footnote omitted).

> When assessing voluntariness pursuant to the totality of the circumstances, a court should look at the following factors: the duration and means of the interrogation; the physical and psychological state of the accused; the conditions attendant to the detention; the attitude of the interrogator; and any and all other factors that could drain a person's ability to withstand suggestion and coercion.

*Id.* (citations omitted). "The determination of whether a confession is voluntary is a conclusion of law and, as such, is subject to plenary review." *Commonwealth v. Templin*, 795 A.2d 959, 961 (Pa. 2002), citing *Nester*, *supra*.

"A determination of whether a juvenile knowingly waived his *Miranda* rights and made a voluntary confession is to be based on a consideration of the totality of the circumstances, including a consideration of the juvenile's age, experience, comprehension and the presence or absence of an interested adult." *In re T.B.*, 11 A.3d 500, 506 (Pa.Super. 2010), *appeal denied*, 24 A.3d 864 (Pa. 2011), quoting *In Interest of N.L.*, 711 A.2d 518, 520 (Pa.Super. 1998). "[T]he *per se* requirement of the presence of an interested adult during a police interview of a juvenile is no longer required. Nevertheless, it remains one factor in determining the voluntariness of a juvenile's waiver of his *Miranda* rights." *Id.* at 507, citing *Commonwealth v. Williams*, 475 A.2d 1283 (Pa. 1984).

Instantly, appellant was only three days shy of his 18th birthday. Although technically still a juvenile, he was almost an adult. He was experienced in the criminal justice system and had a prior record. In fact,

he had been questioned in another, unrelated homicide just a few months earlier, in March 2011. There was no evidence that appellant suffered from any mental incapacity or psychological condition which would affect his ability to understand his rights. Appellant was advised of his *Miranda* rights and executed a waiver of rights form. Although an interested adult was not present, Detective Patrick Kinavey testified that appellant never asked to speak with his parents or a lawyer. The trial court found Detective Kinavey's testimony to be credible, and rejected appellant's testimony that he was physically and verbally threatened and intimidated. (Trial court opinion, 1/21/14 at 10.) We find appellant knowingly and intelligently waived his *Miranda* rights and gave a voluntary confession. The trial court did not err in denying appellant's suppression motion.

Next, appellant argues that the trial court erred in allowing the audiotape of his confession to be re-played for the jury during their deliberations. According to appellant, this placed undue emphasis on his statement to police and de-emphasized his trial testimony in which he denied any involvement in the shooting. (Appellant's brief at 32-33.) Appellant argues that the trial had proceeded quickly and the testimony was fresh in the minds of the jurors, making the re-playing unnecessary. (*Id.* at 32.)

"When a jury requests that recorded testimony be read to it to refresh its memory, it rests within the trial court's discretion to grant or deny such

request. Furthermore, so long as there is not a flagrant abuse of discretion, this decision should not be overturned on appeal." ***Commonwealth v. Gladden***, 665 A.2d 1201, 1205 (Pa.Super. 1995) (***en banc***), ***appeal denied***, 675 A.2d 1243 (Pa. 1996) (citations omitted).

> Generally, the determination whether to grant a request from jurors for a reading of a portion of the trial testimony during deliberations for the purpose of refreshing its recollection rests within the discretion of the trial court. The reading of the testimony does not implicate reversible error, provided that it does not place undue emphasis on one witness's testimony.

***Commonwealth v. Johnson***, 838 A.2d 663, 677 (Pa. 2003), citing ***Commonwealth v. Peterman***, 244 A.2d 723, 726 (Pa. 1968).

We find no abuse of discretion in granting the jury's request to hear appellant's taped confession again. First, we observe that this did not violate Pa.R.Crim.P. 646(C)(2), which prohibits the jury from having a copy of any written or otherwise recorded confession by the defendant during their deliberations. Appellant's confession was re-played in open court; the tape was not allowed to go back with the jury into the jury room. (Notes of testimony, 11/8-15/12 at 297.) In addition, appellant made his confession an issue when he testified that it was coerced and involuntary. There is nothing to support appellant's contention that at the time the jury asked to hear the taped confession again, they had already made up their minds that appellant made the statement voluntarily. (Appellant's brief at 33.) We note that the jury found appellant not guilty of first-degree murder. The

trial court did not abuse its discretion in allowing appellant's taped statement to be re-played for the jury to refresh their recollection. **See Gladden**, **supra** (no error in allowing police detective's testimony to be re-read to the jury to refresh their memory, which included testimony regarding the defendant's statement to police).

In his third and final issue on appeal, appellant contends that the trial court erred in disallowing evidence of his co-conspirator, Hashim Rashad's statement to police. According to appellant, Rashad's statement was admissible as a statement against penal interest under Pa.R.E. 804(b)(3).

At trial, during his opening statement, defense counsel remarked:

> There are certain things in this case that do not make sense. Ms. Pellegrini brought up Hashim Rashad. As the testimony comes out, we are going to hear that someone else in fact confessed to this crime. So, ladies and gentlemen, don't --
>
> MS. PELLEGRINI: I need to make an objection.

Notes of testimony, 11/8-15/12 at 26-27. During the ensuing sidebar, defense counsel remarked only that, "Well, at some point I am going to have to ask the detective if someone else confessed to the crime." (**Id.** at 27.) The trial court then instructed the jury to disregard counsel's last statement. (**Id.** at 28.)

Later, during cross-examination of Detective Kinavey, defense counsel asked him whether or not he had questioned Rashad:

A.    Hashim Rashad was already in custody.

Q.    So you knew where he was?  You have been down to the Allegheny County Jail before?

MS. PELLEGRINI:  Objection.

MR. ABRAMOVITZ:  May we approach?

(Whereupon, a sidebar conference was held as follows:)

MS. PELLEGRINI:  I'm going to object.  This is a completely improper line of cross-examination.  He is attempting to elicit information regarding the co-defendant, his statement, whether he was interviewed.  It is not relevant, it is hearsay, it is completely improper.  It is the same objection that I made during his opening.

MR. ABRAMOVITZ:  It is part of the investigation, and it can tend to prove or disprove the essential elements of the charge.

THE COURT:  Objection sustained.  You can't go into it.

MR. ABRAMOVITZ:  I will move on.

(Whereupon, the sidebar conference concluded.)

*Id.* at 150-151.

Appellant never argued at trial that Rashad's statement to police was admissible as a statement against penal interest.  He is raising that issue for the first time on appeal.  As the trial court states, he never offered any portion of Rashad's statement to evaluate whether or not any particular exception to the rule against hearsay applied.  (Trial court opinion, 1/21/14 at 14.)  Nor did he establish that Rashad was unavailable as a witness, and

that his statement is supported by corroborating circumstances that clearly indicate its trustworthiness as required by Rule 804(b)(3). As such, the issue is deemed waived. Pa.R.A.P. 302(a); **Commonwealth v. Fink**, 791 A.2d 1235, 1248 (Pa.Super. 2002) (citations omitted).

Furthermore, appellant cannot demonstrate how he was prejudiced by the trial court's ruling where there is no indication that Rashad's statement was exculpatory. Appellant did not file a pre-trial motion **in limine** to admit Rashad's statement into evidence, nor does it appear in the record. Appellant never made an offer of proof or established what Rashad told police about the shooting. As such, the contents of Rashad's statement are unknown. This claim fails.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/29/2014

- 14 -