J-S23011-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| FAKIY A. FURLOW | : | |
| | : | |
| Appellant | : | No. 2508 EDA 2022 |

Appeal from the Judgment of Sentence Entered July 18, 2022
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0006981-2021

BEFORE:  PANELLA, P.J., KUNSELMAN, J., and KING, J.

MEMORANDUM BY PANELLA, P.J.:　　　　　　　**FILED SEPTEMBER 29, 2023**

Fakiya Furlow appeals from the judgment of sentence entered in the Court of Common Pleas of Philadelphia after Furlow was found guilty of carrying a firearm without a license and carrying firearms on public streets or public property in Philadelphia. Furlow claims the trial court erred in denying his motion to suppress physical evidence because the police officer's questioning exceeded the scope of a permissible traffic stop and the officer lacked reasonable suspicion to conduct a protective frisk. We find his claims without merit and therefore affirm.

At the hearing on Furlow's motion to suppress evidence, the Commonwealth presented the testimony of Officer Christopher Rycek. Officer Rycek testified that at approximately 7:40 p.m. on September 22, 2020, he stopped Furlow for driving without headlights at night. *See* N.T. Suppression

Hearing, 6/17/2022, at 10. Rycek stated he had been on the police force for eight-and-a-half-years, and proceeded to describe that Furlow retrieved his license and registration from the glove compartment in a manner that in Officer Rycek's experience was consistent with someone trying to conceal a firearm. *See id.* at 15-16.

As a result, Officer Rycek asked Furlow if he had ever been arrested or had weapons in the vehicle, to which Furlow responded he had not. *See id.* at 11. However, when Officer Rycek ran a criminal background check, it revealed Furlow had a prior drug arrest. *See id.* Officer Rycek returned to the vehicle and asked why Furlow had lied about his prior arrest, but Furlow did not respond. *See id*. at 13. The officer then instructed Furlow that he was going to frisk him, then opened the door, felt Furlow's waistband, and discovered a firearm. *See id*. at 14.

Officer Rycek arrested Furlow and charged him with carrying a firearm without a license and carrying firearms on public streets or public property in Philadelphia. Furlow filed a motion to suppress the physical evidence which, after a hearing, the trial court denied. *See* Order Denying Motion to Suppress, 7/18/2022. Furlow waived his right to a jury trial and the trial court found him guilty on both counts and sentenced him to one year of probation. *See* Order of Sentence Guilty, 7/18/2022.

Furlow now appeals the trial court's denial of his motion to suppress the evidence of the firearm. Furlow claims Officer Rycek's questioning exceeded

the scope of a permissible traffic stop and the officer lacked reasonable suspicion to conduct a protective frisk.

Our review of challenges to a trial court's denial of a suppression motion is "limited to the evidence for the prosecution and whatever evidence for the defense which is uncontradicted on the record as a whole." *Commonwealth v. Smith*, 836 A.2d 5, 10 (Pa. 2003) (citation and quotation marks omitted). The record is limited to the evidence presented at the suppression hearing. *See Commonwealth v. Harlan*, 208 A.3d 497, 499 (Pa. Super. 2019). Additionally, the record must be viewed in the light most favorable to the Commonwealth as the prevailing party. *See Commonwealth v. Jackson*, 907 A.2d 540, 542 (Pa. Super. 2006). If the trial court's factual findings are supported by the record, its decision may only be reversed if its legal conclusions are erroneous. *See Commonwealth v. Laatsch*, 661 A.2d 1365, 1367 (Pa. 1995).

First, Furlow claims the trial court erred in denying his motion to suppress because the police exceeded the scope of a permissible traffic stop. When stopping a motor vehicle for further investigation of an observed Vehicle Code violation, a police officer has the authority to check "vehicle registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or secure such other information" reasonably necessary to enforce the Vehicle Code. *Commonwealth v. Clinton*, 905 A.2d 1026, 1030 (Pa. Super. 2006) (citation omitted). Additionally, a police officer

may ask the driver whether there are weapons in the car, or anything else he should be aware of, as these questions present only a "minute intrusion" and fall "unquestionably and completely on the side of officer safety." *Id.* at 1031. Moreover, questioning unrelated to traffic stop does not render seizure unlawful "so long as those inquiries do not measurably extend the duration of the stop." *Arizona v. Johnson*, 555 U.S. 323, 333 (2009). To justify detaining an individual for further questioning, the officer must be able "to point to specific and articulable facts that, taken together with the reasonable inferences from those facts, reasonably indicate that criminal activity might have been afoot." *Commonwealth v. Parker*, 619 A. 2d 735, 738 (Pa. Super. 1993).

To support his claim, Furlow relies on *Commonwealth v. Lopez*, 609 A.2d 177 (Pa. Super. 1992). There, the officer pulled Lopez over for a traffic violation, asked for his credentials, and returned to his cruiser where he verified the documents. *See id.* at 179. When the officer returned to the vehicle Lopez was renting, without ever returning Lopez's credentials, the officer asked Lopez to exit the vehicle and walk with him to the rear of the vehicle. *See id.* The officer proceeded to ask questions about the origin and destination of Lopez's trip, if he could look in the vehicle, and ultimately ask if Lopez would consent to a search of the vehicle. *See id.*

Lopez consented and the canine search revealed over 70 pounds of marijuana. *See id.* This Court found that, once Lopez's credentials were

checked and the officer no longer had questions related to the initial stop, the detention ceased to be lawful because there were no reasonable grounds to suspect an illegal transaction in drugs or other serious crime. ***See id.*** at 182.

However, the facts here present a distinctly different order of events than those in ***Lopez***. Here, upon initially approaching the vehicle, the officer asked Furlow for his credentials. ***See*** N.T., Suppression Hearing, 6/17/2022 at 11. Officer Rycek testified that, when Furlow was retrieving his credentials from the glove box, "he was doing such in a slow manner, and it was almost as if he didn't want to come out of his seat in the hunched over position. He also fumbled around with his paperwork while providing it to me." ***Id.*** The officer described the movements, based on his experience on the police force, as being consistent with concealing a firearm. ***See id.*** at 16. After recognizing the movements to retrieve the documents, Officer Rycek asked if Furlow had prior arrests, was on probation or parole, or had any weapons in the vehicle, to which Furlow responded he had not. ***See id.*** at 11. At the suppression hearing, the officer explained that he normally asks these questions during traffic stops to gauge the situation for his personal safety:

> When I do traffic stops, I do ask about probation, parole, prior arrests, if people have permits to carry, and if there's firearms in the car. That's all safety purposes. I'd like to know who I'm dealing with during the course of traffic violations.

***Id.*** at 29.

When Officer Rycek returned to his patrol car to verify Furlow's driver credentials, he simultaneously ran a search of Furlow's criminal history. ***See***

*id.* at 11. Although Furlow's driver's credentials checked out, the criminal background database revealed that Furlow lied about his arrest history. ***See id.*** at 11, 20. Officer Rycek explained that he returned to Furlow's vehicle with no intention of issuing a citation but to further question Furlow about why he had lied about prior arrest. ***See id.*** at 31.

Based upon this record, we cannot conclude that the suppression court erred in finding that "there is no evidence in the record that checking Furlow's arrest record added time to the stop." Trial Court Opinion, 10/17/2022, at 3. While Furlow is correct in pointing out that the criminal record check was not relevant to the initial reason for the stop, he is incorrect in asserting that having "only observed a traffic violation, Officer Rycek's authority was limited to issuing a citation or warning." Appellant's Brief, at 8. Instead, Officer Rycek noted that Furlow's behavior during the stop caused him to have concerns that Furlow was concealing a firearm. These observations were sufficient to justify at least some minor investigation to determine if Furlow posed a threat to Officer Rycek's safety. Given the lack of evidence of how long the criminal background check took compared to the other document queries, there is no basis upon which to conclude that Officer Rycek unreasonably extended the duration of the stop to address his safety concerns. Therefore, we find Furlow's first claim does not merit relief.

Next, as his second issue on appeal, Furlow claims the trial court erred in denying his motion to suppress because he believes Officer Rycek conducted

a frisk without reasonable suspicion that criminal activity was afoot. Whether an officer possessed reasonable suspicion is determined by considering "the totality of the circumstances." ***Commonwealth v. Simmons***, 17 A.3d 399, 403 (Pa. Super. 2011) (citation omitted). "These circumstances are to be viewed through the eyes of a trained officer." ***Commonwealth v. Jackson***, 907 A.2d 540, 543 (Pa. Super. 2006) (citation omitted).

A police officer may conduct a frisk limited to what is necessary to discover any weapons if the officer has both reasonable suspicion that criminal activity may be afoot and reasonable belief that the subject is armed and presently dangerous. ***See Commonwealth v. Taylor***, 771 A.2d. 1261, 1269 (Pa. 2001). To justify a frisk, the officer must be able to point to "specific and articulable facts" indicating the subject of the frisk "may be armed and dangerous." ***Commonwealth v. Cooper***, 994 A.2d 589, 593 (Pa. Super. 2010).

Furtive movements witnessed during a lawful traffic stop may provide a reasonable basis for a protective frisk. ***See Simmons***, 17 A.3d at 404. However, "[a] police officer's observation of a citizen's nervous demeanor and furtive movements, without more, establishes nothing more than a 'hunch[.]'" ***Commonwealth v. Reppert***, 814 A. 2d 1196, 1206 (Pa Super. 2002). This Court has recognized that a subject's display of elusive behavior, such as lying to an officer, may provide the officer with reasonable suspicion to detain the

subject for further investigation. **See Commonwealth v. Williams**, 73 A.3d 609, 616 (Pa. Super. 2013).

Here, when Officer Rycek was asked why he performed the frisk, he explained, "[i]n this case based off the totality of the circumstances in my observations of his nervousness, conversation with my partner, the seated position and his mannerisms, I made the determination that he may have a firearm and I frisked him for my safety." N.T., Suppression Hearing, 6/17/2022 at 27. After viewing the bodycam footage of the stop and hearing the officer's testimony at the suppression hearing, the trial court found that some of Furlow's movements could be interpreted as an attempt to "conceal something":

> I find that Mr. Furlow did not take an excessively long time to produce his registration. So I find that the speed at which he got his registration and produced it was not suspicious. So I find that in your favor. But I do find that as he leaned over into the glove box, he kept his hand on the steering wheel and that could have been interpreted by the police officer, as he testified, as an attempt to con[c]eal something. So those are t[w]o mixed findings.

**Id.** at 41.

In addition to these furtive movements, Furlow's elusive behavior witnessed by Officer Rycek raised additional suspicion that criminal behavior may be afoot. Furlow told the officer that he had not been arrested before but, when the officer ran a criminal background check, it revealed that Furlow had a prior drug-related arrest. **See id.** at 11, 20. Then, Officer Rycek returned to the vehicle to ask Furlow why he had lied about the prior arrest and asked if

there were any firearms present. **See id.** at 13. This time, Furlow did not respond to the officer's questions: "I observed [Furlow] was hesitant to answer my questions as well as he had a blank stare on his face which I conveyed to be he was concerned and/or nervous." **Id.** at 15. At this moment, Officer Rycek proceeded to frisk Furlow, who remained seated in the vehicle, and discovered the firearm in Furlow's waistband. **See id.**

Based on this record, we cannot conclude that the suppression court erred in finding that Officer Rycek possessed sufficient reasonable suspicion to justify the frisk. Furlow's furtive movements, false statements about his prior arrests, and failure to respond to questions about the presence of a firearm collectively present specific and articulable facts that gave the officer reasonable suspicion to believe criminal activity was afoot and reason to believe Furlow may be armed and dangerous. Therefore, we find the trial court did not err in denying the motion to suppress the physical evidence of the firearm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/29/2023