J-S54023-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JESUS MANUEL BELTRAN-LEON | |
| Appellant | No. 2214 MDA 2013 |

Appeal from the Judgment of Sentence October 28, 2013
In the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0001711-2012

BEFORE:  LAZARUS, J., MUNDY, J., and STABILE, J.

MEMORANDUM BY MUNDY, J.:                    **FILED OCTOBER 30, 2014**

Appellant, Jesus Manuel Beltran-Leon, appeals from the October 28, 2013 aggregate judgment of sentence of four to eight years' incarceration, imposed following his conviction by a jury of persons not to possess a firearm, firearms not to be carried without a license, possession of a controlled substance (cocaine), and the summary traffic offense of periods for requiring lighted lamps.[1]  After careful review, we affirm.

A review of the certified record reveals the following history of the case.  Based on circumstances that unfolded during a traffic stop, Appellant was charged on December 25, 2011, with the latter three of the aforementioned offenses.  On March 27, 2012, the trial court permitted the

---

[1] 18 Pa.C.S.A. §§ 6105(a)(1), 6106(a)(1), 35 P.S. § 780-113(a)(16), and 75 Pa.C.S.A. § 4302(a)(1), respectively.

Commonwealth to amend its information to add the charge of persons not to possess a firearm. On May 9, 2012, Appellant filed an omnibus pretrial motion, including a motion to suppress physical evidence allegedly obtained by the police as a result of their illegal detention of Appellant. After a hearing held on June 25, 2012, the trial court denied Appellant's pretrial motions by order filed January 15, 2013. The matter proceeded to a jury trial on September 13, 2013.[2] At the conclusion of the trial, the jury found Appellant guilty of all counts, and the trial court found Appellant guilty of the summary traffic offense.

Prior to sentencing, Appellant's privately retained trial counsel petitioned for leave to withdraw his representation after Appellant's sentencing, as he had not been retained to represent Appellant beyond that proceeding. The trial court granted the petition by order entered October 15, 2013, to be effective at the conclusion of Appellant's sentencing. The trial court sentenced Appellant on October 28, 2013, to an aggregate term of incarceration of four to eight years.[3] At sentencing, as the trial court was

---

[2] The trial was held jointly with Appellant's co-defendant, Jose Rigoberto Garcia-Quintero.

[3] The trial court imposed a term of four to eight years' incarceration on the person not to possess firearm count, a concurrent term of incarceration of three to six years on the possession of a firearm without a license count, and a concurrent term of incarceration of six to 12 months on the possession of a controlled substance count.

advising Appellant of his post-sentence rights, counsel initiated the following

exchange.

> [TRIAL COUNSEL]: I had filed a motion to withdraw which Judge Trebilcock had granted that on October 15th effective after today's date…. I think [Appellant] is interested in filing an appeal. I think his issues raised at the suppression matter are certainly viable and I would request the court give [] consideration. I understand he's filed for a public defender. One has not been yet assigned to him.
>
> THE COURT: Very well. We'll direct[] the transcription of the record, **expand the time within which to file post-sentence motions for 45 days as well as time within which to file a [sic] appeal**. That can be expanded if the transcript has not been provided to the public defender for good cause shown.

N.T., 10/28/13, at 9-10 (emphasis added). Appellant did not file a post-

sentence motion. On December 12, 2013, Appellant filed a notice of

appeal.[4]

---

[4] We note that a timely appeal must be filed within 30 days of the judgment of sentence in open court. Pa.R.A.P. 903(c)(3). "[T]he timeliness of an appeal implicates our jurisdiction and may be raised *sua sponte*" *Commonwealth v. Trinidad*, 96 A.3d 1031, 1035 (Pa. Super. 2014) (citations omitted). The period for filing an appeal may not be enlarged by this Court. Pa.R.A.P. 105(b). Instantly, Appellant's notice of appeal was filed 45 days after the trial court imposed its judgment of sentence, and ordinarily we would quash the appeal as untimely. "However, we have held that we will address an otherwise untimely appeal if fraud or breakdown in the trial court's processes resulted in an untimely appeal." *Commonwealth v. Khalil*, 806 A.2d 415, 420 (Pa. Super. 2002) (citation omitted), appeal denied, 818 A.2d 503 (Pa. 2003). This Court has declined to quash an appeal where a "problem arose as a result of the trial court's misstatement of the appeal period, which operated as a breakdown in the court's operation." *Commonwealth v. Coolbaugh*, 770 A.2d 788, 791 (Pa. Super.

*(Footnote Continued Next Page)*

- 3 -

On December 13, 2013, the trial court issued an order directing Appellant to file a concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). On January 3, 2014, the trial court granted an extension, requiring Appellant to file his Rule 1925(b) statement on or before February 3, 2014. Appellant filed his Rule 1925(b) statement on February 4, 2014. In a footnote within his concise statement, Appellant noted, "[t]he deadline for filing this 1925(b) statement was February 3, 2014, however due to a winter snow storm, the Clerk of Court's Office was closed on that date."[5] Appellant's Rule 1925(b)

_(Footnote Continued)_ ───────────────

2001). Instantly, the trial court advised Appellant that his new counsel would have 45 days to file a post-sentence motion and notice of appeal. Appellant filed his notice of appeal in reliance on the trial court's representation. In light of the cited authority, we decline to quash this appeal.

[5] Although counsel's assertion, that due to inclement weather the Office of the Clerk of Courts of York County was closed on February 3, 2014, is not corroborated in the record, neither the trial court nor the Commonwealth questions this assertion contained in his Rule 1925(b) statement, and we see no reason to do so. Nevertheless, we note Appellant should have sought leave to file _nunc pro tunc_ for extraordinary circumstances per Rule 1925(b)(2), rather than assume acceptance of his late filing. **Commonwealth v. Kearney**, 92 A.3d 51, 59-60 (Pa. Super. 2014). However, even if we deem Appellant's Rule 1925(b) statement untimely, we note this Court has held that such "failure to timely file a Rule 1925(b) statement is the equivalent of a failure to file said statement." **Commonwealth v. Fischere**, 70 A.3d 1270, 1275, n.2 (Pa. Super. 2013) (_en banc_), _appeal denied_, 83 A.3d 167 (Pa. 2013), _citing_ **Commonwealth v. Thompson**, 39 A.3d 335, 340 (Pa. Super. 2012). Since such late filing is tantamount to _per se_ ineffective assistance of counsel, we may address any late filed issues in lieu of a remand, if the trial court has fully addressed them in its Rule 1925(a) opinion. **Id.**, _citing_ **Thompson**, **supra**. Such is the case here.

Statement, 2/4/14, at 2, n.1. On February 24, 2014, the trial court filed its Rule 1925(a) opinion. Therein the trial court referenced its January 15, 2013 opinion as containing the reasoning for its denial of Appellant's pretrial motions, now questioned on appeal.

On appeal, Appellant raises the following issue for our consideration.

> Whether the suppression court committed an error of law in denying Appellant's Omnibus Pre-Trial Motion to Suppress Evidence when the police maintained Appellant in an unlawful investigatory detention after determining that they lacked probable cause to arrest Appellant for DUI?

Appellant's Brief at 4.

A challenge to a trial court's denial of a suppression motion implicates this Court's following standard of review.

> [We are] limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole.

**Commonwealth v. Jones**, 988 A.2d 649, 654 (Pa. 2010) (citations and quotation marks omitted), *cert. denied*, **Jones v. Pennsylvania**, 131 S. Ct. 110 (2010).

> This Court is bound by those of the suppression court's factual findings which find support in the record, but we are not bound by the court's conclusions of law. When the suppression court's specific factual findings are unannounced, or there is

- 5 -

a gap in the findings, the appellate court should consider only the evidence of the prevailing suppression party … and the evidence of the other party … that, when read in the context of the entire record, remains uncontradicted.

***Commonwealth v. Astillero***, 39 A.3d 353, 357 (Pa. Super. 2012), *appeal denied*, 48 A.3d 1246 (Pa. 2012) (citation omitted).

However, where the appeal of the determination of the suppression court turns on allegations of legal error, [t]he suppression court's conclusions of law […] are not binding on an appellate court, whose duty it is to determine if the suppression court properly applies the law to the facts. As a result, the conclusions of law of the suppression court are subject to plenary review.

***Commonwealth v. Anderson***, 40 A.3d 1245, 1247 (Pa. Super. 2012), *appeal denied*, 51 A.3d 837 (Pa. 2012) (citation omitted).

In this case, Appellant avers that the physical evidence seized from his vehicle was "the result of [the police] illegally holding [Appellant] in custody[, and] must be suppressed." Appellant's Brief at 12.

Article I, § 8 of the Pennsylvania Constitution and the Fourth Amendment to the United States Constitution both protect the people from unreasonable searches and seizures. Jurisprudence arising under both charters has led to the development of three categories of interactions between citizens and police. The first, a "mere encounter," does not require any level of suspicion or carry any official compulsion to stop or respond. The second, an "investigative detention," permits the temporary detention of an individual if supported by reasonable suspicion. The third is an arrest or custodial detention, which must be supported by probable cause.

> In evaluating the level of interaction, courts conduct an objective examination of the totality of the surrounding circumstances. ***Commonwealth v. Strickler***, 563 Pa. 47, 757 A.2d 884, 889 (2000) (citations omitted).

***Commonwealth v. Lyles***, 97 A.3d 298, 302, (Pa. 2014) (some citations omitted)

> A totality-of-the-circumstances approach allows the court to consider all facts at the officer's disposal and does not require the court to disregard those adduced during a valid interdiction, [such as a] traffic stop. Indeed, routine constitutional analysis requires courts to utilize facts gathered during each escalating phase of a police investigation in determining whether police acted properly as the interaction between police and citizen proceeded towards an arrest.

***Commonwealth v. Kemp***, 961 A.2d 1247, 1258-1259 (Pa. Super. 2008).

> In [***Commonwealth v. Strickler***, 757 A.2d 884, 889 (Pa. 2000)], our Supreme Court set forth a number of factors to assist in determining whether the interaction between a defendant and a police officer following the conclusion of a valid traffic stop is a mere encounter or an investigative detention:
>
>> (1) the presence or absence of police excesses; (2) whether there was physical contact; (3) whether police directed the citizen's movements; (4) police demeanor and manner of expression; (5) the location and time of the interdiction; (6) the content of the questions and statements; (7) the existence and character of the initial investigative detention, including its degree of coerciveness; (8) 'the degree to which the transition between the traffic stop/investigative detention and the subsequent encounter can be viewed as seamless, ... thus suggesting to a citizen that his movements may remain subject to police

restraint,' ... and (9) whether there was an express admonition to the effect that the citizen-subject is free to depart, which 'is a potent, objective factor.'

*Commonwealth v. Kemp*, 961 A.2d 1247, 1253 (Pa.Super.2008) (*en banc*) (citing and quoting *Strickler*, 563 Pa. at 75, 757 A.2d at 898–99). When an individual has been subjected to a valid detention but police then continue to engage the person in conversation, the person is less likely to believe that he is actually free to leave the scene. *Id.*

*Commonwealth v. Caban*, 60 A.3d 120, 127-128 (Pa. Super. 2012), *appeal denied*, 79 A.3d 1097 (Pa. 2013). "To maintain constitutional validity, an investigative detention must be supported by a reasonable and articulable suspicion that the person seized is engaged in criminal activity and may continue only so long as is necessary to confirm or dispel such suspicion…." *Commonwealth v. Strickler*, 757 A.2d 884, 889 (Pa. 2000).

The facts involving the traffic stop, further detention and subsequent arrest of Appellant transpired as follows. Appellant was driving on Carlisle Street in Hanover Borough at around 11:00 p.m. on December 24, 2011. N.T., 6/25/12, at 58. He was observed by Hanover Borough Police Officer Kelly Brubaker to be travelling without headlights on. *Id.* Officer Brubaker effected a traffic stop, and in her subsequent interaction with Appellant, developed a suspicion of a possible driving under the influence of alcohol (DUI) violation. *Id.* at 11, 64. Officer Brubaker then directed Appellant to exit the vehicle in order to perform field sobriety tests. *Id.* As Appellant is

a native Spanish speaker, Officer Brubaker questioned his comprehension of her instructions on how to perform the tests, which were not completed. *Id.* at 12-13, 64. Hanover Borough Police Sergeant Jason Byers heard the report of the traffic stop and proceeded to the scene due to his greater relative experience with DUI arrests.[6] *Id.* at 11. Upon arrival, Sergeant Byers detected an odor of alcoholic beverage emanating from Appellant's breath and learned that Appellant had admitted to drinking. *Id.* at 12. Sergeant Byers then administered an additional field sobriety test, which Appellant completed successfully. *Id.* Sergeant Byers described Appellant's demeanor as "giggly and laughing," and stated "he appeared he may be intoxicated." *Id.* at 14. The officers then had Appellant submit to a preliminary test of his breath (PBT), which indicated a blood alcohol content (BAC) of .158. *Id.* at 12.

Thereafter, the police officers determined there was no probable cause to arrest Appellant for DUI. *Id.* at 13. This was due in part to the Hanover Borough Police Department's policy that "the [PBT] is not used to make an arrest[, but] simply used to confirm [] suspicions." *Id.* at 8. Nevertheless, the officers did not release Appellant as they had concerns about Appellant's

---

[6] Sergeant Beyers had nine years' experience with the Hanover Borough Police Department, handling about 10 to 20 DUI arrests per year. Officer Brubaker and a third officer on the scene, Officer Mease, by contrast, each had only about two years' experience. N.T., 6/25/12, at 4-5, 11.

ability to drive home safely. *Id.* at 14-15. Specifically, Sergeant Byers

testified at the suppression hearing as follows.

> [BY ASSISTANT DISTRICT ATTORNEY:]
>
> Q. Okay. And I want to talk specifically about some of the things that you observed about [Appellant]. You indicated that you did not feel at that time as though you had probable cause for the arrest for [DUI]. Did [Appellant] appear to be intoxicated or drunk?
>
> [BY SERGEANT BYERS:]
>
> A. He appeared to have been drinking, obviously from admitting he had been drinking, the odor of alcoholic beverage, he was giggly and laughing, but he was not specifically what I would – I'm trying to think how to phrase this. He appeared he may be intoxicated, and certainly upon providing the PBT, it was – I was able to say that, yes he very well could have this BAC with the behaviors he's explained; however, I'm a firm believer that you have to build the probable cause, and I'm not just going to use a BAC to say that – or a breath test to say, okay, now he's intoxicated.
>
> I certainly didn't feel, upon learning of the breath sample BAC, that I was going to allow him to walk away. I did not feel it was safe for him to walk away, and again, based on my observations of the passenger, I was certainly not going to allow him to drive or walk away from the scene.

*Id.* at 14-15.[7]

---

[7] The passenger was Appellant's co-defendant, Garcia-Quintero, who had the odor of alcoholic beverage emanating from his breath, had trouble staying awake during the stop, and had trouble balancing upon exiting the vehicle. N.T., 6/25/12, at 15-16.

After affording Appellant the opportunity to call for a ride, which proved unsuccessful, the officers directed Appellant to enter the back of one of the police cruisers in order to be transported home. *Id.* at 24. Upon securing the keys to the vehicle, Sergeant Byers observed an open container, containing what smelled like an alcoholic beverage. *Id.* at 42-43. Sergeant Byers, then directed Garcia-Quintero to exit the passenger seat for the same purpose. *Id.* Sergeant Byers returned to Appellant's vehicle to reposition it in a legally parked manner. *Id.* at 26. When closing the passenger door, Sergeant Byer observed a gun leaning against the center console. *Id.* at 27. Appellant and Garcia-Quintero were then removed from the cruisers to be held more securely and were searched for weapons. *Id.* at 29. In the process of securing the gun, Sergeant Byers observed a dollar bill folded in a manner that according to his training suggested it was being used as a packet for narcotics. *Id.* at 29-30. On closer inspection, it was discovered that the dollar bill contained a white powdery substance, which field-tested as cocaine. *Id.* at 31. Appellant was read his *Miranda* rights in both Spanish and English. *Id.* at 58-59. Appellant then gave his permission to the police to further search the vehicle. *Id.* at 33-34. Sergeant Byers noted an abundance of air fresheners placed throughout the vehicle and what appeared to be disturbed panel coverings. *Id.* at 34-35. After checking databases, the police officers determined neither Appellant nor Garcia-Quintero had a license to carry a firearm and neither was the

registered owner of the firearm. *Id.* at 32-33. Appellant was then placed under arrest. *Id.* at 32. Thereafter, a search warrant was obtained for the vehicle and two packets of cocaine were found in the subsequent search. *Id.* at 35-36.

Instantly, Appellant concedes the initial traffic stop was legal and supported by probable cause of the headlight infraction. Appellant's Brief at 13, *citing* **Commonwealth v. Chase**, 960 A.2d 108, 115-116 (Pa. 2008). Similarly, Appellant does not challenge that upon interacting with Appellant during the traffic stop, Officer Brubaker, and later Sergeant Byers, made observations supporting a reasonable suspicion of possible DUI. *Id.* at 13-14. However, noting **Strickler**'s admonition that detentions based on reasonable suspicion should last only so long "as is necessary to confirm or dispel such suspicion," Appellant argues his further detention by the police after they determined no probable cause existed to arrest for DUI was illegal. *Id.* at 12, 13, *quoting* **Commonwealth v. LaMonte**, 859 A.2d 495, 500 (Pa. Super. 2004), *quoting* **Strickler**, *supra*.

> Making excuses to detain [Appellant] any longer after the officers made [the] determination [that probable cause for DUI did not exist] was a violation of the 4th Amendment and Article 1, Section 8. The appropriate course of action was to let Appellant go. The seizure was illegal. The evidence obtained as a result of the continued unlawful detention should have been suppressed.

*Id.* at 17.

Citing **Commonwealth v. Brown**, 654 A.2d 1096, 1097 (Pa. Super. 1995), *appeal denied*, 664 A.2d 972 (Pa. 1995), the trial court concluded the removal of Garcia-Quintero from the vehicle was lawful and "the weapon in question, although not visible until [] Garcia-Quintero[] was taken out of the vehicle, was not [obtained as] a result of illegal police conduct." Trial Court Opinion, 1/15/13, at 6. In **Brown**, we held "that an officer, when making a lawful stop of a motor vehicle, may order the occupants out of the car despite the lack of a reasonable suspicion that the passengers are engaged in criminal activity." **Brown**, **supra**. As **Brown** was an appeal by a passenger challenging his own seizure without independent reasonable suspicion during a traffic stop, it is inapposite to the instant appeal, where Appellant lacks standing to challenge Garcia-Quintero's detention.[8]

Instantly however, the decision by the police officers to not arrest Appellant for DUI did not negate the existence of probable cause, which is evaluated on an objective, not subjective, basis. Our Supreme Court has recently clarified this principle.

> In order to determine whether probable cause exists to justify a warrantless arrest, we must consider the totality of the circumstances. [**Commonwealth v. Clark**, 735 A.2d 1248, 1252

---

[8] Although we deem the trial court's rationale inapposite, we can nonetheless affirm the trial court's decision for reasons other than those upon which it relied. **See Commonwealth v. Harper**, 611 A.2d 1211, 1213 n.1 (1992).

(Pa. 1999)]; *see also Illinois v. Gates*, 462 U.S. 213, 233 (1983). "Probable cause exists where the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed," and must be "viewed from the vantage point of a prudent, reasonable, cautious police officer on the scene at the time of the arrest guided by his experience and training." *Clark*, *supra* at 1252 (quotation omitted). As we have stated:

> Probable cause is made out when the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime. The question we ask is not whether the officer's belief was correct or more likely true than false. Rather, we require only a *probability,* and not a *prima facie* showing, of criminal activity. In determining whether probable cause exists, we apply a totality of the circumstances test.

*Commonwealth v. Thompson,* 985 A.2d 928, 931 (Pa. 2009) (emphasis in original; citations and quotation marks omitted).

In the Fourth Amendment context, "the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action." *Whren v. United States*, 517 U.S. 806, 813 (1996). In other words,

> Fourth Amendment reasonableness is predominantly an objective inquiry. We ask whether the circumstances, viewed objectively, justify the challenged action. If so, that action

was reasonable whatever the subjective intent motivating the relevant officials. This approach recognizes that the Fourth Amendment regulates conduct rather than thoughts….

*Ashcroft v. al-Kidd*, --- U.S. ----, ----, 131 S. Ct. 2074, 2080 (2011) (citations and quotation mark omitted).

*Commonwealth v. Martin*, --- A.3d ---, 2014 WL 4745782, *10-11 (Pa. 2014).

Accordingly, we reject Appellant's position that the decision by the police not to charge him with DUI, due to their subjective belief that probable cause did not exist, eliminated all legitimacy for his continued detention. Here, applying the foregoing standard and viewing the totality of the circumstances known to the officers at the time they observed the firearm, we conclude that probable cause did objectively exist to arrest Appellant for DUI. These factors include the open container found in the vehicle, Appellant's admission that he had been drinking, the odor of alcoholic beverage on his breath, Appellant's demeanor as "giggling and laughing," and the PBT's BAC results of .158.

Although not always admissible at trial, "a portable breathalyzer test (PBT) [is] frequently used to establish probable cause to arrest." *Commonwealth v. Teems*, 74 A.3d 142, 147 (Pa. Super. 2013), *appeal denied*, 79 A.3d 1098 (Pa. 2013). "[I]t is well established that probable cause to arrest can be supported by the existence of evidence that is

inadmissible at trial." ***Commonwealth v. Weaver***, 76 A.3d 562, 567 (Pa. Super. 2013), *appeal granted*, 86 A.3d 862 (Pa. 2014). The Hanover Police Department's policy to employ discretion in not arresting based on PBT results does not preclude an objective determination of probable cause from the "vantage point of a prudent, reasonable, cautious police officer." ***Martin***, ***supra***, *quoting* ***Clark***, ***supra***. In light of the existence of probable cause, there is no Fourth Amendment violation in Appellant's continued detention by the police for the purpose of driving him home in lieu of a more restrictive arrest. Since during that detention the gun and dollar bill were readily observed and supported reasonable suspicion of further criminal activity, we conclude the trial court did not err or abuse its discretion in declining to grant Appellant's suppression motion.[9] ***See Anderson***, ***supra***.

In light of the foregoing, we conclude Appellant's sole issue on appeal is without merit. Accordingly, we affirm the October 28, 2013 judgment of sentence.

Judgment of sentence affirmed.

Judge Stabile joins the memorandum.

Judge Lazarus concurs in the result.

---

[9] Because of our disposition of this issue, we need not address the Commonwealth's contention that the continued detention of Appellant was justified based on probable cause for public drunkenness, 18 Pa.C.S.A. § 5505. Commonwealth's Brief at 6.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/30/2014