654 A.2d 1096

**COMMONWEALTH of Pennsylvania**

v.

**Timothy BROWN, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 3, 1994.

Filed Jan. 25, 1995.

Bernard L. Siegel, Philadelphia, for appellant.

Kathy L. Echternach, Asst. Dist. Atty., Philadelphia, for Com.

Before OLSZEWSKI, DEL SOLE and BECK, JJ.

BECK, Judge:

The single issue in this case concerns the authority of police to order a passenger out of a car stopped for a traffic violation. We hold that an officer, when making a lawful stop of a motor vehicle, may order the occupants out of the car

despite the lack of a reasonable suspicion that the passengers are engaged in criminal activity.

The testimony presented at trial established the following. Appellant Timothy Brown was employed at a Dunkin' Donuts store located in the Fox Chase area of Philadelphia. Sometime in October, 1991 appellant quit his job and then encountered difficulty in getting money he claimed the store owed him as a final paycheck. After speaking with the manager and being told that no money was due him, appellant suggested to two of his friends, Theodore Burns and Rodney Burns, that they rob the store. Appellant explained that the robbery should take place on a Sunday night since at that time the entire weekend's receipts would be in the store safe.

The Burns brothers agreed and the three men arrived at the store in the early morning hours on November 11, 1991 armed with three guns, a crowbar to open the safe and duct tape to bind the store's employees. In order that he not be recognized, appellant waited outside while Theodore and Rodney Burns entered the store. The men drew their weapons on the two employees and one patron inside and ordered them to the rear of the store. After robbing them, the men taped their mouths and hands and forced them into a freezer. Once the employees were out of sight, Rodney opened the back door to let appellant inside. At that point a customer, Stephen Rivel, entered the store. He was taken at gunpoint to the rear of the store where he struggled with his captors. Rivel was shot several times in the legs, then his shirt was pulled up over his head and he was shot again, a single, fatal bullet to the back of his head. After taking whatever valuables could be found from the body, the men left Rivel on the floor by a drain in the back of the store.

The three then set about opening the safe and removed from it all of the weekend's cash. They also emptied the cash register and fled in the car they had driven to the store. Within minutes, the employees freed themselves, exited the freezer and found Rivel's body. They immediately called police. Philadelphia Police Sergeant James Owens heard the police radio broadcast of the crime which reported that two

black males had committed a murder at the Dunkin' Donuts and fled on foot. Owens, who knew the location of the store and knew that he would not be the first officer on the scene, decided to approach the area via Rising Sun Avenue, figuring this road to be a likely escape route should the men be in a vehicle.

Two and one half miles from the scene of the crime and within four minutes of receiving the radio call, Owens observed an automobile headed away from the Dunkin' Donuts on Rising Sun Avenue. In the car he saw two black males. He was suspicious about the vehicle and noted that there appeared to be a lot of activity going on inside it. The windows were fogged to such a degree that Owens could barely see the occupants in the front seat and could observe nothing in the back seat. Owens turned his car around to begin following the vehicle in hopes of gaining more information about the crime over his radio. He then noticed that the car did not have a proper license tag and had only a piece of paper attached to the rear window.

Because of the motor vehicle violation he observed, Owens put on his lights, ordered the car to stop and called for backup. Rodney Burns, the driver, obeyed the officer's command and pulled the car to the side of the road. Owens approached the driver and requested his license and registration. Rodney could produce neither and was ordered out of the car. At that point another police vehicle arrived and Owens directed Rodney to the rear of the car, went around to the passenger side and ordered the front seat passenger, Theodore Burns, out of the vehicle. At this point, Owens noticed for the first time that another black male, appellant, was seated in the back of the car. Owens asked his fellow officers to attend to Theodore and Rodney Burns while he ordered appellant from the car. After appellant exited the vehicle, Owens saw on the back seat a Dunkin' Donuts bag with money sticking out of it. He reached into the vehicle to retrieve the bag and when he leaned on the back seat, the entire seat came forward and exposed what lay underneath: three guns and a trash bag filled with Dunkin' Donuts bags, money, coupons and a wom-

en's purse.[1]  Owens informed the other officers that he found
the weapons;  the car's occupants were then arrested.

A further search of the car yielded a crowbar, a hammer
and duct tape.  Identification in the purse revealed that it
belonged to one of the Dunkin' Donuts employees.  All three
men were transported by police to the store where they were
identified by the victims of the crime.  At the police station,
each suspect gave a statement admitting to his involvement in
the crime.  The only material discrepancy in the statements
was who fired the shot into Stephen Rivel's head, causing his
death.  The three men were charged with murder, robbery
and related offenses and were tried together before a jury.
Each was found guilty of second degree (felony) murder, as
well as the robberies of the store, the employees and the
patron.  In this timely appeal by appellant only, he raises a
single issue for our review, namely, whether the trial court
erred in failing to suppress the evidence discovered by Ser-
geant Owens.

Appellant has advanced a clear and concise statement of the
issue on appeal.  He does not question the officer's authority
to stop the vehicle in which he was riding nor does he claim
that the driver of the car should not have been ordered to
alight from the vehicle.  Appellant's sole basis for challenging
Sergeant Owens's actions is his alleged lack of authority to
order appellant, a passenger, out of the car.  Lacking proba-
ble cause to arrest or an articulable suspicion of criminal
activity, appellant argues, police cannot command a passenger
to exit a vehicle where the only lawful reason the car has been
stopped is a violation of the traffic code.  Since all the
evidence recovered from the car resulted from Owens's obser-
vation after appellant got out of the car, all of it should have
been suppressed as fruit of the illegal order to leave the
vehicle.

We begin our review by first noting what is not before us.
The argument advanced by appellant could be made under

1.  The car had been modified to accommodate a stereo speaker system.
The back seat was not bolted to the car but instead was simply "placed"
in the rear of the car on top of the sound system.

either the Fourth Amendment to the United States Constitution or Article I, Section 8 of the Pennsylvania Constitution, both of which prohibit unreasonable searches and seizures. Despite appellant's vague attempts to argue that his position "stands as the established rule of law in Pennsylvania," he simply has not presented to this court an argument based on our state constitution.

All of the cases relied on by appellant were decided under the Fourth Amendment, not Article I, Section 8. Indeed, there simply is no authority for appellant's position that is based on state constitutional principles. Our only source of analogous case law is rooted in federal constitutional principles. In the absence of state constitutional authority, appellant must convince this court to consider and interpret Article I, Section 8 in a manner different than the United States Supreme Court's analysis of the Fourth Amendment.

Our supreme court has made it clear that where a litigant seeks to depart from federal constitutional interpretation or precedent on the basis of a state constitutional principle, or seeks to extend the state constitution beyond that which has been decided with regard to a parallel provision of the federal constitution, he or she must satisfy the requirements set forth in *Commonwealth v. Edmunds*, 526 Pa. 374, 586 A.2d 887 (1991).[2]

■ Here, appellant simply has not satisfied the mandates of *Edmunds*, even to a minimum degree, and his failure to do so results in waiver of the state constitutional claim. *Commonwealth v. Lucas*, 424 Pa.Super. 173, 622 A.2d 325 (1993),

---

**2.** *Edmunds* requires a litigant to brief and analyze the following four factors:
   1) the text of the constitutional provision,
   2) the history of the provision, including Pennsylvania case law,
   3) related case law from other states, and
   4) policy considerations, including unique issues of state and local concern, and applicability within modern Pennsylvania jurisprudence.
*Edmunds, supra* at 390, 586 A.2d at 895.

*appeal denied,* 537 Pa. 648, 644 A.2d 733 (1994).[3]  Therefore, our decision today focuses solely on the federal constitution and our analysis reflects only Fourth Amendment law.

■  As stated previously, the single issue on appeal is the trial court's denial of suppression based on the legal conclusion that Sergeant Owens acted properly in ordering appellant from the car.  Appellant contends that this conclusion was an error of law which must be reversed by this court.  Clearly, our review extends to all legal conclusions made by a suppression court.  *Commonwealth v. Brundidge,* 533 Pa. 167, 620 A.2d 1115, 1116 (1993) (one of appellate court's responsibilities is to review suppression court's legal conclusions).

Appellant insists that the controlling case in this matter is *Commonwealth v. Pollard,* 450 Pa. 138, 299 A.2d 233 (1973).  In *Pollard,* the appellant was a passenger in a car which was pulled over for failing to stop at a red light.  The passenger/appellant was ordered from the car and when he complied, a white packet containing drugs dropped from his hand.  He was placed under arrest and ultimately found guilty of possession of narcotics.  With respect to the validity of the order that appellant exit the vehicle, the Commonwealth argued that the police officer's actions were justified as an investigative stop under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

Our supreme court disagreed and held that the seizure which occurred when appellant was ordered out of the car was violative of the Fourth Amendment because the officer's actions did not satisfy *Terry,* that is, he had no reasonable belief that criminal activity was afoot and that appellant was armed and dangerous.  *Pollard, supra,* 450 Pa. at 141–42, 299 A.2d at 234–35.  Therefore, the court reasoned, no lawful justification existed for the officer's action.  *Id.* at 143, 299 A.2d at 235–36.

Several years after *Pollard,* our supreme court decided *Commonwealth v. Mimms,* 471 Pa. 546, 370 A.2d 1157 (1977)

---

**3.**  Appellant's note that "both constitutions were cited in the pre-trial motions to suppress" does not relieve him of the requirements set out in *Edmunds.*

(*Mimms I*). In *Mimms I,* the appellant was the driver of a vehicle which was stopped for an expired license tag. The officer told the appellant to step out of the car and produce identification. The Commonwealth conceded that the officer did not suspect any criminal activity on the appellant's part. Instead, the driver was ordered out of the car as a matter of course, the policy having been adopted by police as a precautionary measure for the safety of the officer. Once the appellant was outside the vehicle, the officer noticed a large bulge in his jacket, frisked him and found a loaded revolver. The appellant was convicted for carrying a concealed deadly weapon and argued on appeal that the officer had no authority to order him from the car based merely on the underlying traffic violation.

Our supreme court agreed and, relying on *Pollard,* held that the order to get out of the car was an impermissible seizure under the Fourth Amendment because the officer could not articulate "objective observable facts to support a suspicion that criminal activity was afoot or that the occupants of the vehicle posed a threat to police safety." *Mimms I, supra,* at 552, 370 A.2d at 1160.

The United States Supreme Court granted certiorari and reversed the Pennsylvania Supreme Court. *Pennsylvania v. Mimms,* 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) (*Mimms II*). In *Mimms II,* the Court considered the reasonableness of the officer's action by balancing the public interest in insuring the safety of law enforcement personnel against "the individual's right to personal security free from arbitrary interference by law officers." *Id.* at 109, 98 S.Ct. at 332.

Relying on studies about the incidence of assaults and murders of police officers resulting generally from contacts with suspects in motor vehicles and specifically from contacts with persons stopped for traffic violations, the Court found the safety of the officer to be "both legitimate and weighty." *Id.* at 110, 98 S.Ct. at 333. In balancing this important interest against the intrusion into a driver's personal liberty occasioned by an order to get out of the car, the Court described the individual interest as *"de minimus."* The Court concluded:

The police have already lawfully decided that the driver shall be briefly detained; the only question is whether he shall spend that period sitting in the driver's seat of his car or standing along side it.... What is at most a mere inconvenience cannot prevail when balanced against legitimate concerns for the officer's safety.

*Id.* at 111, 98 S.Ct. at 333.[4]

In accordance with *Mimms II,* this court subsequently has held that where an officer effectuates a valid traffic stop, he or she may order the driver to exit the vehicle despite the lack of an articulable basis to believe that criminal activity is afoot or that the driver is armed and dangerous. *See Commonwealth v. Lopez,* 415 Pa.Super. 252, 609 A.2d 177, 181, *appeal denied,* 533 Pa. 598, 617 A.2d 1273 (1992). *See also Commonwealth v. Elliott,* 376 Pa.Super. 536, 546 A.2d 654, 660 (1988), *appeal denied,* 521 Pa. 617, 557 A.2d 721 (1989) (*Mimms II* makes it clear that the officer need not articulate any reason for ordering the driver from the vehicle when the vehicle is lawfully detained for a traffic violation.).

It is appellant's position that *Pollard* has not been effectively overruled by *Mimms II* because *Mimms II* involved the driver of a car and *Pollard* involved a passenger. We disagree; both *Pollard* and *Mimms I* were based on an erroneous interpretation of the parameters of the Fourth Amendment under the circumstances of a valid traffic stop. In deciding those cases, our supreme court did not have the benefit of the United States Supreme Court's reasoning espoused in *Mimms II.*

Subsequent case law suggests that while the particular circumstances of a police officer ordering a passenger from a lawfully stopped car have not been addressed directly by our courts, the logic and reasoning in *Mimms II* dictates the ultimate result should such an issue be raised. In *Commonwealth v. Elliott,* 376 Pa.Super. 536, 546 A.2d 654 (1988), police

---

4. On remand, our supreme court did not revisit the issue based on a state constitutional analysis because the state claim had not been raised. *See Commonwealth v. Mimms,* 477 Pa. 553, 385 A.2d 334, 335 n. 6 (1978) (*Mimms III*).

stopped a vehicle because its rear view mirror was obstructed in violation of 75 Pa.C.S.A. § 4524. The officer noticed unopened beer bottles in the rear seat, a strong odor of alcohol and empty beer bottles strewn throughout the vehicle's interior. After speaking with the driver of the car, the officer asked the passenger of the car for identification; the passenger was unable to produce any but admitted that he was nineteen years old. The officer then asked the passenger to exit the vehicle and when he complied, the officer saw a clear plastic bag containing marijuana protruding from under the passenger seat. *Elliott, supra* at 540–42, 546 A.2d at 656.

In addressing the validity of the officer's order that the passenger get out of the car, a panel of this court held that the officer had a reasonable suspicion that criminal activity was afoot based on his observations of the beer and his knowledge that appellant was under the legal drinking age. The court then discussed the rationale of *Mimms II:*

> *Mimms [II]* clearly holds that "officers may, consistent with the Fourth Amendment, exercise their discretion to require a driver who commits a traffic violation to exit the vehicle even though they lack any particularized reason for believing the driver possesses a weapon." We need not go so far as to hold that an officer who has lawfully stopped a vehicle for a traffic violation may order a passenger out of the vehicle as a matter of course, in the absence of either a reasonable suspicion that the occupant is involved in criminal activity or that he is armed and dangerous. *While the rationale in Mimms [II] would seem to suggest this result,* we simply hold today that where a police officer has lawfully stopped a vehicle for a traffic violation, he may order a passenger to alight from the vehicle when he has an articulable basis to believe that criminal activity is afoot without violating the Fourth Amendment.

*Id.* at 549, 546 A.2d at 660 (citations omitted) (emphasis supplied).

Recently, another panel of this court confronted a case where the passenger was ordered from a car that was stopped for a traffic violation. *See Commonwealth v. Morris,* 422

Pa.Super. 343, 619 A.2d 709 (1992), *appeal denied,* 534 Pa. 654, 627 A.2d 731 (1993). Upon approaching the car, the officer observed the passenger stuffing a brown paper bag under the seat. The officer asked the passenger to exit the vehicle and then located the bag which contained clear vials of crack cocaine. The court found that the officer's actions were justified because his observations "supported a genuine belief that his safety was in jeopardy and, at the very least, articulable suspicion that the bag contained contraband or a dangerous weapon." *Id.* at 350, 619 A.2d at 712–13. In discussing the decisions in *Mimms II* and *Elliott,* the court then noted:

> Though not a question before us, we point out that there would appear to be no basis for distinguishing between an officer's authority to order a driver from a car, and an officer's authority to order a passenger from a car when the officer reasonably fears in either case for his safety or believes that criminal activity is afoot.

*Id.* at 349, 619 A.2d at 712, n. 2.

▮▮ The Commonwealth argues that *Mimms II, Elliott* and *Morris* are "controlling decisions that fully approve the authority of police to ask a passenger to get out of a car stopped for a traffic violation." [5] We disagree and believe this

---

**5.** The Commonwealth also argues that a very recent decision of this court, *Commonwealth v. Baer,* 439 Pa.Super. 437, 654 A.2d 1058 (1994), applies directly to this case. In *Baer,* the trial court suppressed evidence seized as a result of an officer's order that the passenger get out of the car. This court reversed and held that under the circumstances of a lawful traffic stop, an officer may order a driver or a passenger from a car when the officer reasonably believes that criminal activity is afoot or fears for his safety. *Id.* at 443, 654 A.2d at 1061. The *Baer* court noted that, based on the facts found by the suppression court, the officer had reason to believe that the vehicle was stolen and that his safety was at risk. *Id.*

While the decision in *Baer* may appear at first glance to be dispositive of the issue in this case, it actually is more similar to *Elliott* discussed above. In both *Elliott* and *Baer,* the court reviewed the particular circumstances of the traffic stop, including the responses and behavior of the vehicle's occupants, and concluded that the concerns addressed in *Terry, supra* (reasonable suspicion of criminal activity or perceived danger) were met.

The instant case is more like *Mimms II,* wherein the officer could not articulate a specific reason for ordering the driver from the car, but did

case to be one of first impression in which we are guided by the reasoning of similar cases, the persuasive authority of decisions of other courts and the common logic that attends situations such as the one presented here. After careful consideration of the issue, we conclude that the reasoning underlying the result in *Mimms II* simply recognizes that when an officer detains a vehicle for violation of a traffic law, it is inherently reasonable that he or she be concerned with safety and, as a result, may order the occupants of the vehicle to alight from the car. The very same dangers recognized by the United States Supreme Court in *Mimms II* are present whether a lone driver or a vehicle filled with passengers is stopped. Indeed, due to the nature of the potential danger, an officer's concerns can only *increase* with the number of occupants in a car. The *Mimms II* court aptly articulated the risk:

> We think it too plain for argument that the State's proffered justification—the safety of the officer—is both legitimate and weighty. "Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties." And we have specifically recognized the inordinate risk confronting an officer as he approaches a person seated in an automobile. "According to one study, approximately 30% of police shootings occurred when a police officer approached a suspect in an automobile." We are aware that not all these assaults occur when issuing a traffic summons, but we have before expressly declined to accept the argument that traffic violations necessarily involve less danger to officers than other types of confrontations. Indeed, it appears "that a significant percentage of murders of police officers occurs when the officers are making traffic stops."

so as a matter of course for his safety. The distinction is significant because, unlike the holdings in *Baer* or *Elliott,* we hold here that in all cases involving lawful traffic stops, it is not unreasonable for an officer to request that the passengers in a lawfully stopped car exit the vehicle so that the safety of the officer is, if not insured, at least better protected.

*Mimms II,* 434 U.S. at 110, 98 S.Ct. at 333 (citations omitted). Because the potential danger to police increases, rather than diminishes, when passengers are present in a car, and because the safest and, therefore, most appropriate method of mitigating that danger is to order the passengers to exit the vehicle so that they remain in full view of the officer, we hold today that police may request both drivers and their passengers to alight from a lawfully stopped car without reasonable suspicion that criminal activity is afoot. Our conclusion is grounded in the sound rationale of *Mimms II* which balanced the important interest in the safety of law enforcement officials against the *de minimus* intrusion to the occupants of the lawfully stopped car. We believe the Fourth Amendment is not violated by such a rule.

Our decision today reflects the reasoning of other courts that have reached the same conclusion. In reciting cases that either have held that police action of this type is appropriate or have implied that such action would be appropriate under the *Mimms II* rationale, the court in *United States v. McCoy,* 824 F.Supp. 467 (D.Del.1993), held that an officer's command to passengers to exit a vehicle was proper because his initial stop of the car was lawful. *Id.* at 474. The court reasoned:

> Such an extension of *Mimms [II]* is entirely consistent with the balancing test utilized by the Supreme Court in the *Mimms [II]* opinion.... [I]T would be incongruous to permit an officer to order the driver out of his vehicle pursuant to a lawful stop in order to diminish the likelihood that the officer will be attacked with a concealed weapon, but not permit the officer to order the passengers out of a lawfully stopped vehicle, when those passengers present the same risk of attack and have the same access to concealed weapons.

*Id.* The particular facts of this case highlight the potential dangers that police officers face on a daily basis when making lawful traffic stops. Here, Sergeant Owens approached the vehicle without even being aware that a second passenger was in the rear seat of the car. That passenger had access to three loaded firearms, one of which had just been used to kill

an unwitting citizen who had jeopardized the success of the occupants' armed robbery. It is this type of scenario which prompted the United States Supreme Court to conclude that, in keeping with the Fourth Amendment, the interest in the safety of law enforcement officers outweighs the *de minimus* intrusion to the individual who is asked to step outside a lawfully stopped motor vehicle.

We find no error in the suppression court's legal conclusion that Sergeant Owens acted properly in ordering appellant from the car. Judgment of sentence affirmed.

DEL SOLE, J., files a concurring and dissenting statement.

DEL SOLE, Judge, concurring and dissenting statement.

I concur with the result reached by the Majority. Like Judge Beck, I too conclude that this matter is not presented to us in the form of a state constitutional issue. See *Commonwealth v. Dorsey*, 439 Pa.Super. 494, 654 A.2d 1086 (Ford Elliott Dissenting Opinion) (1995).

While I agree with the result reached by the Majority in affirming the trial court's decision not to suppress evidence, I disagree with the need, in this case, to make so sweeping an analysis and pronouncement. The trial court found that the actions of the police officer were in keeping with the mandates of *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) and *Commonwealth v. Elliott*, 376 Pa.Super 536, 546 A.2d 654 (1988). With this I agree. In addition, I believe that *Commonwealth v. Baer*, 439 Pa.Super. 437, 654 A.2d 1058 (1994) is dispositive of this matter.

The trial judge determined:

The robbery was reported over the police radio as a shooting which occurred about 3:23 a.m. and a hospital case. The information was reported as two black males in a vehicle traveling south bound away from the store. Police sergeant James Owens who heard the report, was enroute to the scene when he saw a light blue Malibu Classic automobile with two black males traveling away from the scene. He saw no license plate on the vehicle. It had a homemade

paper plate for a license plate. He made the "U" turn; followed the vehicle; radioed his plan and then stopped the vehicle for investigation. As he approached the vehicle he told the driver to get out and hand him the auto registration card. He told them that the purpose of the stop was to investigate the non-license plate. He also told them that he was investigating the shooting at the Dunkin' Donut Shop. He told the second male to also get out, the officer observed a third male [Timothy Brown] in the back seat crouched down behind the drivers seat. ... he told that male to also get out ...

Trial court opinion pp 2 & 3.

Given Sergeant Owens' knowledge of the recent murder and robbery which involved the use of guns, his observation of a vehicle in the early morning hours traveling away from the scene, and ultimately the presence of this defendant hiding in the vehicle, I agree with the trial court that sufficient facts were presented to support Sergeant Owens' belief that criminal activity was afoot and that his safety was at risk. Under established case law, that is all that was necessary. The issue which the Majority seeks to decide is not present in this case, and should await decision until a case with appropriate facts arises. As it stands, the Majority's pronouncement is dictum.