J-A19026-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| ELIJAH MALIK HALL DAY | : | |
| | : | |
| Appellant | : | No. 1380 MDA 2021 |

Appeal from the Judgment of Sentence Entered September 28, 2021
In the Court of Common Pleas of Cumberland County
Criminal Division at No(s):  CP-21-CR-0002515-2020

BEFORE:   BOWES, J., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KING, J.:                **FILED: OCTOBER 20, 2022**

Appellant, Elijah Malik Hall Day, appeals from the judgment of sentence entered in the Cumberland County Court of Common Pleas, following his bench trial convictions for multiple counts of driving under the influence of a controlled substance ("DUI") and one count each of disorderly conduct and windshield obstructions.[1]  We affirm.

The trial court opinion set forth the relevant facts and procedural history of this appeal as follows:

> On May 15, 2020, Appellant was the driver and sole occupant of a 2002 Cadillac Deville within the borough of Mount Holly Springs, Cumberland County, when his vehicle was observed by Pennsylvania State Police Troopers David

---

[*] Former Justice specially assigned to the Superior Court.

[1] 75 Pa.C.S.A. § 3802(d)(1), (2), 18 Pa.C.S.A. § 5503(a)(2), and 75 Pa.C.S.A. § 4524(e)(1), respectively.

Highhouse and Christine Fow to have window tint which potentially exceeded the level permitted by law. The troopers initiated a traffic stop of Appellant, who pulled over into the parking lot of a nearby Sheetz gas station, in order to further investigate the window tint. The interaction between Appellant and the troopers quickly became adversarial, with Appellant repeatedly rolling his window back up while Trooper Highhouse attempted to speak with him, Appellant refusing to follow instructions to shut off his vehicle and exit it, and a shouting match quickly developing between Appellant and Trooper Highhouse. During that time, Trooper Highhouse detected an aroma of marijuana emanating from Appellant's vehicle, observed that Appellant had red and watery eyes, and Appellant conceded that he had marijuana inside his vehicle.

After Appellant was removed from his vehicle, a protective search of his person was performed by Trooper Highhouse. The search led to another outburst from Appellant, which resulted in his being placed in the back of the troopers' vehicle so that he could cool down before the continuation of the on-scene investigation. While Appellant was in the rear of the troopers' vehicle, a warrantless search of the vehicle was performed[7] and the vehicle's window tint was measured, with the window tint level being in excess of the amount permitted by law.

[7] Prior to the suppression hearing, the Supreme Court's decision in **Commonwealth v. Alexander**, 243 A.3d 177 (Pa. 2020) was announced, establishing that a warrantless vehicle search required both probable cause and exigent circumstances to be constitutionally valid. Due to the lack of exigent circumstances in this case, the Commonwealth withdrew the charge relating to the evidence resulting from the search of the vehicle.

After the search was conducted, Appellant was asked to perform standard field sobriety tests ("SFST"). Prior to the start of those tests, Appellant was read the **Miranda**[2] warnings; the results of the SFSTs suggested that Appellant

_____

[2] **Miranda v. Arizona**, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

- 2 -

was impaired while driving. … As a result, Appellant was placed under arrest on suspicion of driving under the influence, read the DL-26B form, and consented to a blood draw. As stipulated by counsel prior to the non-jury trial, the results of the blood draw were that Appellant had THC and its metabolites in his bloodstream.

Based on the stipulations, [the trial c]ourt found Appellant guilty of the above-listed charges, and on September 28, 2021, sentenced him to not less than 72 hours to not more than 6 months of incarceration. At the request of counsel, Appellant was permitted to remain on bail pending appeal, and Appellant's notice of appeal was filed on October 28, 2021. On that same date, Appellant was ordered to file his concise statement of matters complained of on appeal, which he timely did on November 16, 2021.

(Trial Court Opinion, filed 12/2/21, at 2-4) (some footnotes omitted).

Appellant now raises two issues on appeal:

Whether [Appellant] was subjected to a custodial detention without probable cause when he was forcibly removed from the vehicle and physically detained in handcuffs?

Whether [Appellant] was subjected to a custodial detention without probable cause when he was read his **Miranda** rights while handcuffed in the back of the police cruiser?

(Appellant's Brief at 6).

Appellant's issues are related, and we address them together.[3]

Appellant contends that an arrest must "be supported by probable cause and not merely reasonable suspicion or an educated hunch." (**Id.** at 13). Appellant posits that there were two occasions when he was effectively under

_____

[3] Appellant also acknowledges that his issues are "interrelated," and he addresses the issues together in the argument section of his brief. (**See** Appellant's Brief at 13).

- 3 -

arrest in this case: 1) when the trooper ordered him out of his vehicle and placed him in handcuffs; and 2) when the trooper placed him in the back of the cruiser and provided **Miranda** warnings. At either of these points, Appellant insists that the trooper did not have probable cause to support an arrest for DUI. Appellant admits that "the initial stop in this case may have been only an investigative detention," but he argues that once he "was forced to exit his vehicle, handcuffed, placed in the back of the police car, and read his **Miranda** rights, there was an arrest and probable cause was required." (**Id.** at 19). Moreover, regarding the trooper's observation of the odor of marijuana emanating from the vehicle, Appellant complains that "the odor alone is insufficient [to establish] probable cause." (**Id.** at 20). Based upon the foregoing, Appellant concludes that this Court must reverse the order denying his suppression motion. We disagree.

The following principles govern our review of an order denying a motion to suppress:

> An appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where the appeal of the determination of the suppression court turns on allegations

- 4 -

of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

*Commonwealth v. Ford*, 175 A.3d 985, 989 (Pa.Super. 2017), *appeal denied*, 647 Pa. 522, 190 A.3d 580 (2018).

Contacts between the police and citizenry fall within three general classifications:

The first [level of interaction] is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Commonwealth v. Bryant*, 866 A.2d 1143, 1146 (Pa.Super. 2005), *appeal denied*, 583 Pa. 668, 876 A.2d 392 (2005) (quoting *Commonwealth v. Phinn*, 761 A.2d 176, 181 (Pa.Super. 2000)).

An "investigative detention" is interchangeably labeled as a "stop and frisk" or a "*Terry* stop." *Commonwealth v. Brame*, 239 A.3d 1119 (Pa.Super. 2020), *appeal denied*, ___ Pa. ___, 251 A.3d 771 (2021).

An investigative detention, unlike a mere encounter, constitutes a seizure of a person and thus activates the protections of Article 1, Section 8 of the Pennsylvania Constitution. To institute an investigative detention, an officer must have at least a reasonable suspicion that criminal activity is afoot. Reasonable suspicion requires a finding that based on the available facts, a person of reasonable caution would believe the intrusion was

- 5 -

appropriate.

\*     \*     \*

> Reasonable suspicion exists only where the officer is able to articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity.

*Commonwealth v. Jones*, 874 A.2d 108, 116 (Pa.Super. 2005) (internal citations omitted).

"[W]hen an officer detains a vehicle for violation of a traffic law, it is inherently reasonable that he or she be concerned with safety and, as a result, may order the occupants of the vehicle to alight from the car." *Commonwealth v. Brown*, 654 A.2d 1096, 1102 (Pa.Super. 1995), *appeal denied*, 544 Pa. 642, 664 A.2d 972 (1995). During a traffic stop, the officer "may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions." *Commonwealth v. Wright*, 224 A.3d 1104, 1109 (Pa.Super. 2019), *appeal denied*, ___ Pa. ___, 237 A.3d 393 (2020). "[F]or their safety, police officers may handcuff individuals during an investigative detention." *Id.* (quoting *Commonwealth v. Harris*, 176 A.3d 1009, 1021 (Pa.Super. 2017)).

"The key difference between an investigative and a custodial detention is that the latter 'involves such coercive conditions as to constitute the functional equivalent of an arrest.'" *Commonwealth v. Gonzalez*, 979 A.2d

879, 887 (Pa.Super. 2009) (quoting **Commonwealth v. Pakacki**, 587 Pa. 511, 519, 901 A.2d 983, 987 (2006)).

> The court considers the totality of the circumstances to determine if an encounter is investigatory or custodial, but the following factors are specifically considered: the basis for the detention; the duration; the location; whether the suspect was transported against his will, how far, and why; whether restraints were used; the show, threat or use of force; and the methods of investigation used to confirm or dispel suspicions.
>
> An arrest or "custodial detention" must be supported by probable cause:
>
> Probable cause is made out when the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a [person] of reasonable caution in the belief that the suspect has committed or is committing a crime. The question we ask is not whether the officer's belief was correct or more likely true than false. Rather, we require only a probability, and not a *prima facie* showing, of criminal activity. In determining whether probable cause exists, we apply a totality of the circumstances test.

**Commonwealth v. Goldsborough**, 31 A.3d 299, 306 (Pa.Super. 2011), *appeal denied*, 616 Pa. 651, 49 A.3d 442 (2012) (internal citations omitted).

Instantly, Appellant does not dispute the propriety of the initial traffic stop. **See** 75 Pa.C.S.A. § 4524(e)(1) (stating vehicle cannot have window tint that obstructs view into vehicle through windshield, side wing or side window). Regarding Appellant's subsequent interaction with law enforcement, Trooper Highhouse provided ample testimony about what occurred during the traffic stop. Specifically, the trooper testified that Appellant "pulled into a parking

stall," and the trooper "approached the driver's side of the vehicle." (N.T. Suppression Hearing, 2/17/21, at 9). As he approached, Trooper Highhouse noticed the odor of marijuana by the time he reached "the rear quarter panel of the vehicle[.]" (*Id.* at 12).

The trooper reached the driver's side window, which was up, and the trooper could not see into the vehicle. (*See id.* at 10). Trooper Highhouse requested that Appellant roll down the window, and Appellant complied. (*Id.*) Trooper Highhouse informed Appellant that he had stopped the vehicle due to its window tint. (*Id.*) Appellant then rolled the window back up. (*Id.* at 11). Trooper Highhouse requested that Appellant lower the window again and provide his driver's license, registration, and proof of insurance. (*Id.*) When Appellant lowered the window, Trooper Highhouse observed that "his eyes were watery" and red. (*Id.* at 13).

Significantly, Appellant was uncooperative throughout the interaction with the trooper:

> Upon initial contact, [Appellant] was argumentative. He wanted to argue the reason for the stop and as we progressed through the stop, he became more and more agitated. When I advised him of the odor of marijuana that I smelled inside the vehicle and the actions I was going to take, he became more agitated.

(*Id.* at 12-13).

Based upon the foregoing, Trooper Highhouse ordered Appellant to step out of the vehicle. (*Id.* at 15). Trooper Highhouse described what happened next:

> Initially, he did not comply. I advised him several times to step—turn off the vehicle. He failed to comply with that. I then manually opened the door myself so that he and I—that I could see inside of the vehicle for my safety and I advised him to step out of the vehicle several times. I also advised him to unbuckle his seat belt several times, and it wasn't until I began reaching in the vehicle myself to extract him that he began to comply.

(*Id.* at 16).

Trooper Highhouse frisked Appellant for weapons, handcuffed Appellant, and placed him in the back of the patrol car. (*Id.* at 16-17). Trooper Highhouse explained his decision to place Appellant in the patrol car as follows:

> I was going to proceed by first searching the vehicle based on the probable cause search. Also giving—obviously my presence was agitating [Appellant], and I was trying to create a distance between myself and him to allow him to calm down, to allow his emotions to calm down, and ultimately give him—give him a chance to reevaluate the situation.

(*Id.* at 19-20). After searching Appellant's vehicle, Trooper Highhouse returned to Appellant in the patrol car. At that time, the trooper advised Appellant of his *Miranda* rights and "attempted to explain to him the reason, the actions I took and why I took them." (*Id.* at 22).

Regarding Appellant's argument that he was subjected to a custodial detention at this point, the suppression court considered the trooper's testimony and concluded that the investigative detention had not yet ended:

> Here, Appellant was pulled over because the troopers observed that his vehicle's window tint possibly exceeded the amount permitted by law, and they decided to

- 9 -

investigate the tint level by way of a traffic stop. After initiating the traffic stop, the odor of marijuana was readily apparent to the troopers. Appellant, who was uncooperative and at times defiant toward the troopers during their interaction, was properly removed from his vehicle and placed in the back seat of the troopers' vehicle, for a brief period of time, in order to both protect officer safety and allow Appellant to calm down before the troopers continued their investigation and asked him to perform standard field sobriety tests. Further, Appellant was read the ***Miranda*** warnings out of an abundance of caution prior to Appellant beginning the standard field sobriety tests, rather than because he was under arrest at that time.

(Trial Court Opinion at 6-7). Thus, the court concluded that the interaction did not rise to the level of a custodial detention prior to the performance of the field sobriety tests. (***See id.*** at 9).

Here, the suppression court's factual findings are supported by the record, and its legal conclusions drawn from those facts are correct. ***See Ford, supra***. We emphasize that Trooper Highhouse's testimony revealed a tense interaction between a citizen and law enforcement. Under such circumstances, the relevant case law recognizes an officer's safety concerns. ***See Wright, supra***; ***Brown, supra***. Consequently, Trooper Highhouse legally ordered Appellant to step out of the vehicle. ***See Brown, supra***. Likewise, the trooper was authorized to handcuff Appellant while the investigative detention continued. ***See Wright, supra***. To the extent Appellant also complains that the ***Miranda*** warnings elevated the interaction to the level of a custodial detention, this was just one factor under the totality of the circumstances. ***See Goldsborough, supra***. ***See also***

***Commonwealth v. Douglass***, 539 A.2d 412, 423 n.9 (Pa.Super. 1988) (stating recitation of ***Miranda*** warnings, by itself, does not render investigative detention custodial).   Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/20/2022