J-S08037-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JAMAL BROWN | : | |
| | : | |
| Appellant | : | No. 1674 EDA 2024 |

Appeal from the Judgment of Sentence Entered June 12, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0005434-2023

BEFORE: DUBOW, J., KUNSELMAN, J., and FORD ELLIOTT, P.J.E.*

MEMORANDUM BY FORD ELLIOTT, P.J.E.: **FILED JUNE 6, 2025**

Jamal Brown appeals from the judgment of sentence, entered in the Court of Common Pleas of Philadelphia County, for his convictions of one count each of firearms not to be carried without a license, carrying firearms on public streets or public property in Philadelphia, and improper sun screening on his vehicle.[1] Brown challenges the court's denial of his pre-trial motion to suppress evidence. We affirm.

The trial court set forth the facts of this case as follows:

On November 27, 2022, at approximately 11:25 [a.m.], Philadelphia Police Officer Mark Minissali [] initiated a traffic stop in the area of 2500 Dickinson Street in Philadelphia, Pennsylvania[,] for a vehicle driving with excessive window tint

_____

* Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 6106(a)(1), 6108, and 75 Pa.C.S. § 4524(e)(1).

and an obstructed license plate. After the vehicle was stopped, Officer Minissali noticed the vehicle do a "heavy shift" from left to right as though someone was moving around inside of the vehicle. Officer Minissali approached the vehicle and requested that the driver, later identified as [Brown], roll down all the windows of the vehicle. [Brown] refused, stating that his children were in the back seat. Officer Minissali then requested that [Brown] turn off the vehicle. [Brown, again,] refused, stating "I'm going to get on some shit[,]" and then rolled his window up. Officer Minissali believed this statement was a ["]threat that [Brown] was planning or stating that [Brown] was planning on trying to hurt [him] or start some type of confrontation physically."

[Police] removed [Brown] from the vehicle and frisked [him] for officer safety. [Brown's] children were then removed from the rear of the vehicle. Officer Minissali then conducted a frisk of the passenger compartment for officer safety. [Officer Minissali observed and recovered a] box with ammunition [] from the center console of the vehicle. A black bag containing a loaded 9mm semiautomatic Beretta handgun, a loaded magazine, and a loaded extended magazine was recovered from the rear dashboard of the vehicle, above where the children were seated. A search of the National Crime Information Center [] database [revealed] that the firearm was in stolen status.

Trial Court Opinion, 9/18/24, at 1-2 (unpaginated; citations omitted).

After being charged with, *inter alia*, the above-mentioned crimes, Brown filed a motion to suppress the physical evidence recovered from his vehicle. The court denied Brown's motion to suppress on February 26, 2024, and convicted him of the above-noted offenses at a non-jury trial on that same date. Thereafter, the court sentenced Brown to eleven and one-half to twenty-three months' incarceration followed by three years' probation. Brown timely appealed, and he and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

On appeal, Brown argues the trial court erred in failing to suppress the physical evidence discovered by police in the warrantless search of his vehicle. *See* Appellant's Brief, at 3. Specifically, Brown contends that there was no legal justification for searching the vehicle because probable cause and exigent circumstances were lacking, and there were insufficient facts to support a protective sweep of the passenger compartment of the vehicle.

First, Brown claims that there were insufficient facts from which both probable cause and exigent circumstances could be established to support a vehicle search. ***See Commonwealth v. Alexander***, 243 A.3d 177, 208 (Pa. 2020) (overruling ***Commonwealth v. Gary***, 91 A.3d 102 (Pa. 2014), and holding that Article I, Section 8 of Pennsylvania Constitution requires both probable cause and exigent circumstances to justify warrantless full-vehicle search). Specifically, Brown relies on our decisions in ***Commonwealth v. Arrington***, 233 A.3d 910 (Pa. Super. 2020), and ***Commonwealth v. Cartegena***, 63 A.3d 294 (Pa. Super. 2013) (*en banc*), for his claim that the search of his vehicle was unconstitutional where he did not act nervous and the only factors supporting a search were that Brown was stopped in an overly-tinted vehicle during daylight hours. *See* Appellant's Brief, at 12-14.

As to the claim that police lacked probable cause, Brown argues that there was no indication he committed or was committing a crime and no indicia that he was armed and dangerous. Brown concedes that, during the stop, he stated to officers that if police scared his children, he was "going to get on some shit," but claims that, under the circumstances, it was meant to inform

the officers that his children were in the vehicle; he was not a threat. *Id.* at 9. Brown further states that, rather than "getting on some shit," once ordered out of the car and frisk searched, he did not resist at all and tried to calm his children, and police were unfazed by the comment. *Id.* at 10. Moreover, Brown argues that, before police searched the vehicle, he had not backed up any potential threat and the windows remained rolled down with the passenger compartment visible from the exterior. Also, Brown contends there was no contraband or weapon in plain view.

As to Brown's claim that there were no exigent circumstances present when the firearm was recovered, he argues that, at the time of the search: (1) he was removed from the vehicle; (2) he was in handcuffs behind his back; (3) he was standing at the rear of his vehicle; (4) he was closely surrounded by three to five police officers his vehicle was entirely blocked by police; and (5) there was no one in his vehicle because his children had been removed as well.

Second, Brown argues that there was no justification for a protective sweep of the vehicle because police failed to establish, by the totality of the circumstances, that Brown was dangerous and at risk of obtaining a weapon. Specifically, Brown relies on the above-stated facts and notes that there was no evidence that he moved toward the bag wherein police discovered the gun or toward any area of the vehicle where the firearm was located, Brown did not resist arrest, and he instead tried to calm his children. *See id.* at 14-15. We find that Brown is not entitled to any relief.

Our standard of review from the denial of a motion to suppress is well-established:

> [The appellate] standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We are bound by the suppression court's factual findings so long as they are supported by the record; our standard of review on questions of law is *de novo*. Where, as here, the defendant is appealing the ruling of the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted. Our scope of review of suppression rulings includes only the suppression hearing record and excludes evidence elicited at trial.

***Commonwealth v. Yandamuri***, 159 A.3d 503, 516 (Pa. 2017) (citations and footnote omitted). We may affirm the suppression court's decision if there is any basis in the record to support it, even if we rely on different grounds to reach the same result. ***See Cartagena***, 63 A.3d at 301.

The United States and Pennsylvania constitutions protect citizens from unreasonable police searches and seizures:

> The Fourth Amendment to the United States Constitution,[2] made applicable to the states through the Fourteenth Amendment, and

---

2 The Fourth Amendment states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. Amend. IV.

Article I, Section 8 of the Pennsylvania Constitution[,[3]] protect a person from unlawful searches and seizures. Our Supreme Court has long held that[,] although the Pennsylvania Constitution provides broader protection from unreasonable searches and seizures than the United States Constitution, the *Terry* doctrine, announced in the seminal case of *Terry v. Ohio*, 392 U.S. 1 [] (1968), sets forth the reasonableness standard for Article I, Section 8 of the Pennsylvania Constitution.

*Commonwealth v. Brame*, 239 A.3d 1119, 1127 (Pa. Super. 2020) (some citations omitted; quotation marks, footnote, and brackets omitted).

Pennsylvania law permits police to stop a vehicle if they observe a traffic code violation, which creates the necessary probable cause to stop the vehicle, even if the violation is a minor offense. *See Commonwealth v. Harris*, 176 A.3d 1009, 1019 (Pa. Super. 2017). Further,

[d]uring a traffic stop, the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions. If there is a legitimate stop for a traffic violation[,] additional suspicion may arise before the initial stop's purpose has been fulfilled; then, detention may be permissible to investigate the new suspicions.

*Id.* at 1020 (citations, quotation marks, ellipsis, and brackets omitted).

_____

[3] The Pennsylvania Constitution states:

The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

PA. CONST. Art. I, § 8.

[T]o extend a traffic stop beyond the purposes of enforcing a traffic violation, there must be reasonable suspicion that a defendant may have been engaged in criminal activity independent of the traffic violation. This Court has described the reasonable suspicion standard as follows:

> To establish grounds for reasonable suspicion, the officer must articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity. The question of whether reasonable suspicion existed at the time an officer conduct[ed] the stop must be answered by examining the totality of the circumstances to determine whether the officer who initiated the stop had a particularized and objective basis for suspecting the individual stopped. Therefore, the fundamental inquiry of a reviewing court must be an objective one, namely, whether the facts available to the officer at the moment of the stop warrant a man of reasonable caution in the belief that the action taken was appropriate.

*Commonwealth v. Benitez*, 218 A.3d 460, 471 (Pa. Super. 2019) (citations, quotation marks, and brackets omitted). Moreover, "even a combination of innocent facts, when taken together, may warrant further investigation by the police officer." *Commonwealth v. Rogers*, 849 A.2d 1185, 1189 (Pa. 2004) (citation and quotation marks omitted).

Among the moderate number of questions that police may ask during a vehicle stop are a request to review the vehicle registration, the driver's license, and any other information required to enforce the motor vehicle code. *See Commonwealth v. Mack*, 953 A.2d 587, 589 (Pa. Super. 2008). Moreover, police may request a driver and passengers alight from a lawfully stopped car, as a matter of right, without reasonable suspicion that criminal

activity is afoot. *See Pennsylvania v. Mimms*, 434 U.S. 106, 109-111 (1977); *Commonwealth v. Brown*, 654 A.2d 1096, 1102 (Pa. Super. 1995). Also, under certain circumstances, police officers, for their safety, may handcuff individuals during an investigative detention without converting the interaction into a custodial detention. *See Commonwealth v. Wright*, 224 A.3d 1104, 1109 (Pa. Super. 2019).

As to the constitutionality of a protective sweep search for weapons within the passenger compartment of a vehicle, this Court has explained that the standard is reasonable suspicion rather than probable cause:

> In [*Michigan v. Long*, 463 U.S. 1032 (1983)], the Supreme Court applied the principles announced in *Terry* [], to a search of the passenger compartment of a vehicle for weapons:
>
> > Our past cases indicate that protection of police and others can justify protective searches when police have a reasonable belief that the suspect poses a danger, that roadside encounters between police and suspects are especially hazardous, and that danger may arise from the possible presence of weapons in the area surrounding a suspect. These principles compel our conclusion that **the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons**. *See Terry*, 392 U.S. at 21. 'The issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.' *Id.* at 27. If a suspect is 'dangerous,' he is no less dangerous simply because he is not arrested.

> *Long*, 463 U.S. at 1049-50 (footnote omitted).
>
> The Court emphasized that this holding does not permit police to conduct a search of a vehicle during every investigative stop. *Id.* at 1050 n.14. "A *Terry* search, unlike a search without a warrant incident to a lawful arrest, is not justified by any need to prevent the disappearance or destruction of evidence of crime. **The sole justification of the search is the protection of police officers and others nearby**." *Id.* (citation and quotation omitted). The Court stated that an officer must therefore have reasonable suspicion that the person subject to the stop has a weapon in order to conduct a lawful search of the passenger compartment of a vehicle at the time of the stop. *Id.*

*Cartagena*, 63 A.3d at 298-99 (footnotes, brackets, and ellipses omitted; emphasis added); *see also Commonwealth v. Muhammad*, 289 A.3d 1078, 1089 n.5 (Pa. Super. 2023) (applying *Cartagena* and *Long*).

In *Long*, the United States Supreme Court further explained how the legality of the police protective sweep of the passenger compartment of a vehicle during a traffic stop is based on officer safety:

> Just as a *Terry* suspect on the street may, despite being under the brief control of a police officer, reach into his clothing and retrieve a weapon, so might a *Terry* suspect in Long's position break away from police control and retrieve a weapon from his automobile. **In addition, if the suspect is not placed under arrest, he will be permitted to reenter his automobile, and he will then have access to any weapons inside.** Or, as here, the suspect may be permitted to reenter the vehicle before the *Terry* investigation is over, and again, may have access to weapons. In any event, we stress that a *Terry* investigation, such as the one that occurred here, involves a police investigation at close range, when the officer remains particularly vulnerable in part because a full custodial arrest has not been effected, and the officer must make a quick decision as to how to protect himself and others from possible danger[.] In such circumstances, we have not required that officers adopt alternative means to ensure their safety in order to avoid the intrusion involved in a *Terry* encounter.

*Long*, 463 U.S. at 1051-52 (citations, quotation marks, and italics emphasis omitted; bold emphasis added); *see also Commonwealth v. Morris*, 644 A.2d 721, 723-24 (Pa. 1994) (adopting *Long* and applying it to Article I, Section 8 of Pennsylvania Constitution to permit search, during traffic stop, of bag in passenger compartment large enough to contain weapon).

In *Arrington*, this Court concluded there was no reasonable suspicion supporting a warrantless vehicle search where our Court characterized the circumstances supporting a search as only including that the defendant was nervous during the stop, which occurred at night in a high-crime neighborhood. *See Arrington*, 233 A.3d at 917 (factors considered:  (1) Arrington did not immediately comply when officers asked him to place his vehicle in park; (2) Arrington was "staring around" and non-responsive to commands; (3) Arrington was "reaching around," in the vehicle in non-furtive, slow, and deliberate manner; (4) Arrington was nervous; (5) stop occurred at night; and (6) stop occurred in high-crime area).

Similarly, in *Cartagena*, we held that an officer lacked reasonable suspicion to conduct a warrantless search of a vehicle where:  (1) the stop occurred at night; (2) the defendant's vehicle had dark tinted windows; and (3) the defendant appeared extremely nervous.  *See Cartegena*, 63 A.3d at 304.  In that case, this Court, sitting *en banc*, observed that there was no evidence that the defendant made furtive movements, that the stop occurred in a high-crime area, or that the police saw any indication of a weapon in the vehicle prior to the search.  *See id.* at 304-06; *Commonwealth v. Moyer*,

954 A.2d 659, 669-70 (Pa. Super. 2008) (*en banc*) (evidence that, *inter alia*, vehicle's occupants engaged in furtive movements and appeared nervous insufficient to establish reasonable suspicion); ***Commonwealth v. Reppert***, 814 A.2d 1196, 1206 (Pa. Super. 2002) (*en banc*) ("We have found furtive movements [fail to establish reasonable suspicion] even when they occur in high crime environments in the late hours of the night. Thus, we find no basis to conclude that excessive nervousness and furtive movements, even considered together, give rise to reasonable suspicion of criminal activity.") (citations omitted).

After our review, we conclude that Brown is not entitled to relief. We are satisfied that this case is sufficiently distinguishable from our prior decisions in ***Arrington*** and ***Cartegena***, pursuant to the reasoning and analysis set forth in ***Long*** and ***Morris***, especially insofar as this case involves an observed heavy shift in the interior of Brown's vehicle after he pulled over as well as Brown's potential threat of violence.

First, we conclude that the record facts in this case more than support Officer Minissale's reasonable suspicion that Brown was armed and dangerous, or had access to weapons within his arm's reach within the passenger compartment of his vehicle, thereby supporting a warrantless protective sweep search, because: (1) Brown's vehicle windows were tinted such that officers could not see into the passenger compartment, *see* N.T. Suppression Hearing, 2/26/24, at 9; (2) police observed a heavy shift from left to right inside the vehicle when it pulled over, suggesting there was movement inside

the vehicle prior to their approach,[4] *see id.* at 13; (3) Brown acted "quite irate" with the investigating officers,[5] *id.* at 38; (4) Brown refused to roll down all of the vehicle windows and refused to turn the vehicle off upon police request, *see id.* at 9; (5) Brown rolled the window up after police requested he roll the windows down, *see id.*; (6) Brown told the officers something to the effect of, "I'm going to get on some shit," *id.* at 12, which police were entitled to interpret as a threat of violent confrontation under the circumstances;[6] (7) Officer Minissale testified that the stop was effectuated in a high crime area where, in his eighteen months on the police force, he responded many times to the stop location for shootings and other violations of the Uniform Firearms Act of 1995. *See id.* at 8.

Second, we observe that the protective sweep of Brown's vehicle only encompassed the passenger compartment, and we find the search was

---

[4] *See Commonwealth v. Murray*, 936 A.2d 76, 80 (Pa. Super. 2007) ("excessive movement" in vehicle with tinted windows is factor to consider in totality of circumstances).

[5] Despite his claims of being calm, the suppression court specifically found that Brown was "quite irate," which is supported by the body-worn camera video. *see* N.T. Suppression Hearing, 2/26/24, at 38; *see also* Body-Worn Camera Video Exhibit, at 2:06 – 3:31.

[6] Under the appropriate standard of review, the Commonwealth is entitled to all reasonable inferences, and we conclude that it was reasonable to infer that Brown's statement was meant to be a threat under the totality of the circumstances. *See Benitez*, 218 A.3d at 471. This potential of threat is especially reasonable where the suppression court also specifically found that, early in the stop, Brown stated to police something to the effect that it was a "bad day," *id.* at 39; *see also* Body-Worn Camera Video Exhibit, at 2:09.

supported by reasonable suspicion, as discussed above. ***See Muhammad***, 289 A.3d at 1085 n.2 (***Alexander*** requirements of probable cause and exigent circumstances not at issue when facts of case support constitutionality of protective sweep that only extended to passenger compartment of vehicle). Further, we conclude police properly seized the firearm from the inside of a bag in the passenger compartment of Brown's vehicle. ***See Long***, 463 U.S. at 1049 (police may examine contents of any open or closed container found within passenger compartment, "for if the passenger compartment is within the reach of the arrestee, so will containers in it be within his reach.").

Third, if not arrested, we emphasize that Brown could have returned to his vehicle and could have retrieved the weapon, which is a central concern in ***Long***. ***See Long***, 463 U.S. 1032 at 1052 ("if the suspect is not placed under arrest, he will be permitted to reenter his automobile, and he will then have access to any weapons inside"); ***see also Morris***, 644 A.2d at 724 ("had Officer Benincasa allowed [Morris] to return to his vehicle without searching the bag in question, he would have been taking a grave risk that [Morris] would remove a weapon from the bag and use it. Our constitutional safeguards do not require an officer to gamble with his life."). Accordingly, Brown is not entitled to any relief.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>6/6/2025</u>